MARY TIMLIN, as ADMINISTRATRIX, ETC., of JOHN TIMLIN, DECEASED, RESPONDENT, *v.* THE STANDARD OIL COMPANY OF NEW YORK and THE ACME OIL COMPANY, ELIJAH W. MURPHY and ORLANDO P. LISCOMB, APPELLANTS.

*Maintaining a nuisance by which a party is killed — liability of both the landlord and the tenants — evidence of notice.*

On September 12, 1885, one John Timlin, then in the employ of the Delaware and Hudson Canal Company, was engaged in driving spikes along the rails of that company's track lying nearest to the wall of a shed, which was the property of the New York Central and Hudson River Railroad Company, when a large portion of the wall suddenly fell and killed him ; the portion which fell was thirty-four feet six inches long at its base and forty-seven feet six inches long at its top.

Upon the trial of an action, brought by the administratrix of Timlin, to recover damages, upon the ground that the fall of the wall was due to the negligence of the defendants, the testimony tended to show that the portion of the wall which fell was the easterly wall of a shed which stood alongside, and about six feet westerly of the most westerly track of the Delaware and Hudson Canal Railroad, and that the wall was eleven feet high, one foot thick, 111 feet long, and had been built forty years before, and that at the time of its fall, and for years prior thereto, portions of it had been noticeably in a dangerous condition.

In July, 1884, the defendant, the Standard Oil Company, procured a lease of that shed in the name of the defendant, the Acme Oil Company, for five years, subject to termination by the railroad company by giving a written notice of sixty days. It was stipulated upon the trial that the liability of the Standard Oil Company was the same as if the lease had been made to it. The defendants Murphy & Liscomb had, for a number of years prior to 1884, been under-tenants of a part of the shed of Strain & Reynolds, who were tenants of the New York Central Railroad Company, and also agents of the Standard Oil Company, and Murphy & Liscomb continued as tenants nominally under Strain & Reynolds, but really under the Standard Oil Company at the time the wall fell ; their lease was renewed on the first day of May for each year, and they occupied that part of the shed, the wall of which killed Timlin.

The court charged the jury that if the wall was a nuisance, as against the adjoining owners, at the time the Acme Oil Company became the lessee of the premises in 1884, and continued in that condition until it fell, all the defendants were liable, provided the jury should find that Timlin was free from contributory negligence.

*Held*, that as the jury found that the deceased was rightfully at work at the place where the wall fell upon him, and was free from negligence, that the charge was sufficiently favorable to the defendants.

That as the Standard Oil Company admitted that it was the real owner of the lease, and had been since its date, and stipulated that its liability was the same as if it were named as lessee in the lease, such stipulation was effective against itself, but not exculpatory of the actual lessee, whose agent or partner it might be for aught that appeared.

That if the wall was really and apparently in a dangerous condition when one defendant leased the dangerous part of it to the others, and, notwithstanding the dangerous condition of the wall, the defendant, the lessor, undertook to prolong the receipt of rent for it, and the defendants, the lessees, undertook to prolong its profitable occupancy, and neither took any precaution to prevent its doing injury to innocent persons, that they were liable for such injury.

That they maintained a dangerous structure, and prolonged the continuance of it, in disregard of the principle, *sic utere tuo ut alienum non lædas.*

That the landlords were liable because they were guilty of misfeasance in letting the premises while in a ruinous condition.

*Swords* v. *Edgar* (59 N. Y., 28); *Edwards* v. *New York and Harlem Railroad Company* (98 id., 245) followed.

That as the Acme Oil Company was the lessor or the assignor of the Standard Oil Company, and the latter was the lessor of the other defendants, the Acme Oil Company could not escape liability, because of its not being in actual non-possession of the premises, provided that the premises were in such a condition as to be a nuisance when the Acme Oil Company allowed the Standard Oil Company to take possession thereof in its stead.

It was urged by Murphy & Liscomb that as they had not covenanted to make substantial repairs they were not liable for the omission.

*Held,* that while that might be so, as between themselves and the landlord, their liability to the plaintiff in this case existed because they continued a nuisance which killed the deceased.

The Standard Oil Company requested the court to charge the jury that the occupation of a portion of the building by the company at the time the wall fell was not a ground of recovery against it, which request the court declined to charge.

*Held,* that, assuming that this request might have been properly granted, that as the theory upon which the trial courts submitted the case to the jury made the liability of that defendant to depend upon the question whether this was a nuisance at the date of the renewal of this defendant's lease to Murphy & Liscomb in the May previous to the accident, the refusal so to charge did not in any way prejudice that defendant's case.

An objection was taken to the refusal of the court to charge the jury that evidence of a notice given by a policeman to the foreman of the agent of the Standard Oil Company, shortly before the accident, of the condition of the wall, was entirely immaterial upon the question of the Standard Oil Company's liability.

*Held,* that as the court instructed the jury that no recovery could be had against this defendant unless it knew, or ought to have known, or had notice before the 1st day of May, 1885, that the wall was in a dangerous condition, and in view of the evidence of opportunity on its part to acquire notice, the refusal to so charge did not prejudice the defendant.

APPEAL by the above-named defendants from a judgment rendered at the Albany Circuit upon the verdict of a jury, which was entered in the office of the clerk of the county of Albany on the 3d day of July, 1888, and from an order denying a motion made upon the minutes of the justice presiding at the trial for a new trial, upon the ground that the verdict was contrary to the evidence, and contrary to law and upon exceptions, which was entered in the Albany county clerk's office on March 29, 1888.

The plaintiff complained that John Timlin, her husband and intestate, was, on the 12th day of September, 1885, killed by the falling of a brick wall upon him ; that the fall of the wall was due to the negligence of the defendants.

The testimony tended to show that the portion of the wall which fell was the easterly brick wall of a one-story shed, standing alongside, and about six feet westerly of the western-most tracks of the Delaware and Hudson Canal Company's Railroad, in the city of Albany. The wall was eleven feet high, one foot thick, one hundred and eleven feet long, and had been built forty years before, and at the time of its fall and for years prior thereto portions of it had been noticeably in a dangerous condition. The shed was the property of the New York Central and Hudson River Railroad Company. September 12, 1885, John Timlin, then in the employ of the Delaware and Hudson Canal Company, was engaged in driving spikes along the rails of the canal company's track nearest the wall when a large portion of it suddenly fell and killed him. The portion which fell was thirty-four feet six inches long at its base, and forty-seven feet six inches long at its top.

In July, 1884, the defendant, the Standard Oil Company, procured a lease of the shed in the name of the defendant, the Acme Oil Company, for five years, subject to termination by the railroad company by giving a written notice of sixty days. The Standard Oil Company was the owner of the majority of the stock of the Acme Oil Company, and the lease was for the benefit of the Standard Oil Company. It was stipulated that the liability of the Standard Oil Company was the same as if the lease had been to it. The Standard Oil Company occupied a portion of the shed, but not the portion directly opposite the place where Timlin. was killed. The defendants, Murphy & Liscomb, had been under-tenants of a

part of the shed of Strain & Reynolds for a number of years prior to 1884. Strain & Reynolds were tenants of the New York Central Railroad Company, and also agents of the Standard Oil Company, and Murphy & Liscomb continued as tenants nominally under Strain & Reynolds, but really under the Standard Oil Company at the time the wall fell. Their lease was renewed on the first of May of each year. They occupied that part of the shed, the wall of which killed Timlin. Their lease was subject to the same termination as that to the Acme Oil Company. Strain & Reynolds, as agents of the Standard Oil Company, occupied the portion of the shed not leased to Murphy & Liscomb. The court charged the jury that if the wall was a nuisance as against the adjoining owner at the time the Acme Oil Company became the lessee of the premises in 1884, and continued in that condition until it fell, all the defendants were liable, provided the jury should find that Timlin was free from contributory negligence. The defendants severally excepted.

*M. Hale*, for the Standard and Acme Oil Companies, appellants.

*N. C. Moak*, for Murphy & Liscomb, appellants.

*E. Countryman*, for the respondent.

LANDON, J.:

The jury found that the deceased was rightfully at work at the place where the wall fell upon him and was free from negligence. The court charged the jury that if the wall was a nuisance, as against the adjoining owner, at the time the Acme Oil Company became the lessee of the premises, in 1884, and continued in that condition until it fell, all the defendants were liable. The court defined the sense in which it employed the term nuisance as follows: A man has no right to maintain a building which is inherently weak and in a ruined condition, and liable to fall and do injury to the adjoining owner or the public. Such a building is a private nuisance to those owning property adjoining it, and if it falls and inflicts injury upon any one, lawfully in its vicinity, the owner is liable for all the consequences. The court further said, in substance, that no recovery could be had against the Acme Oil Company, unless the wall was in an apparently ruinous condition when it leased it from the railroad company, or against the Standard Company, unless it was

dangerous before it renewed its lease to Murphy & Liscomb in May, 1885.

The charge was sufficiently favorable to the defendants. A private nuisance is defined in *Swords* v. *Edgar* (59 N. Y., 34) as " anything unlawfully or tortiously done to the hurt or annoyance of the person, as well as the lands, tenements and hereditaments of another." The gist of the action is negligence, and whether by wrongful act or wrongful omission, is not material in this case. The defendants are liable if they owed a duty to the plaintiff's intestate respecting this wall, which they failed to perform, and because of such failure the wall fell and killed him. That duty was, the moment they discovered the wall to be dangerous, to cease maintaining it in that condition, or contributing to such maintenance by act, or by omission to act, they possessing the power of remedial action.

The defendant, the Acme Oil Company, was the immediate lessee of the owner. The Standard Oil Company assumed control under the Acme Oil Company's lease, and has ever since occupied a portion of the building. What relations these two companies sustain to each other does not clearly appear. The Standard Oil Company admits that it is the real owner of the lease and has been since its date, and it stipulates that its liability is the same as if it were named lessee in the lease. But no assignment or lease is shown.

The admission of the Standard Oil Company is effective against itself, but not exculpatory of the actual lessee, whose agent or partner it may be for aught that appears. The Acme Oil Company took the lease in its own name and then permitted the Standard Oil Company to control the premises thenceforth. The transaction implies a co-operation of the two companies, in which one is the lessee for the benefit of the other. Murphy & Liscomb are undertenants of the Standard Oil Company. They had long been in possession of the part of the premises from which the wall fell, and their lease was renewed in the May previous to the accident, in September, 1885. The deceased was not a party to any of these leases, and the plaintiff only examines them in order to ascertain who was maintaining the wall at the date of its fall, and whether the several leases were executed after its dangerous condition existed and was manifest.

If the wall was really and apparently in a dangerous condition when one defendant leased it or the dangerous part of it to the others, then the case stands in this wise — that notwithstanding the dangerous condition of the wall, the defendant, the lessor, undertook to prolong the receipt of rent for it, and the defendant, the lessees, undertook to prolong its profitable occupancy, and neither took any precaution to prevent its doing injury to the innocent. Clearly they thus maintained the dangerous structure, and prolonged the continuance of it as a peril; they did this for gain, in reckless disregard of the rule, *sic utere tuo ut alienum non lœdas*, and of their duty to those to whom the structure was a peril. The landlords, the oil companies, in such case, are liable for the reason stated in *Swords* v. *Edgar* (59 N. Y., 28), and also in the main case upon which their counsel rely (*Edwards* v. *N. Y. and H. R. R. R. Co.*, 98 id., 245), and as cited from *Nelson* v. *Liverpool Brewery Company* (L. R., 2 C. P. D., 311), because they were guilty of misfeasance in letting the premises in a ruinous condition. In *Swords* v. *Edgar*, the deceased was killed by the fall of a pier on which he was engaged in unloading a vessel. The pier was private property, but devoted to the use of those having proper occasion to go upon it; it was in an unsafe condition when the defendant leased it to the tenant, and the lease contained a covenant that the tenant should keep the pier in repair. The landlord was held liable. The *quasi* public use of the pier amounted to a license to the deceased to engage in his work there. Surely, in the present case, the canal company whose servant the plaintiff's intestate was, needed no license from the defendants to work upon his employer's premises. *Todd* v. *Flight* (9 C. B. [N. S.], 377), is cited with approval in *Swords* v. *Edgar*. It was there held that the owner of premises who lets them to a tenant in a dangerous condition, who permits them to remain so until, by reason of want of reparation, they fall upon and injure the house of an adjoining owner, is liable to an action. *Davenport* v. *Ruckman* (37 N. Y., 568), is to the like effect.

In this case the Acme Oil Company is the lessor or assignor of the Standard Company, and the latter the lessor of the other defendants. The case, in this respect, is like *Clancy* v. *Byrne* (56 N. Y., 129), in which the defendant, who was the immediate

lessee of the owner, sub-let the premises without himself ever taking possession. There the defendant escaped liability because it did not appear that the premises were in an unsafe condition when he sub-let them. The Acme Company was not in possession. Neither was the defendant in *Clancy* v. *Byrne,* but his liability was tested by the condition of the premises when he passed their possession to his under-tenant. The case cited holds that the Acme Company cannot escape liability because of its non-possession if the premises were a nuisance when it allowed the Standard Company to take possession in its stead. It cannot close its eyes to the condition of the premises and claim that its self imposed blindness relieves it from duty. It is by its acts and its negligence a co-contributor with the Standard Company.

The Standard Oil Company by its stipulation consents that its liability is to be determined in like manner as if it were named as a lessee in the lease to the Acme Company. Whether co-lessee with the Acme Company or sole lessee, its liability is established by the cases cited. Within the cases above cited the defendants Murphy & Liscomb, as the actual occupants of the premises and constant maintainers of the dangerous structure, are liable. (*Irvine* v. *Wood,* 51 N. Y., 224.) Murphy & Liscomb urge that as they had not covenanted to make substantial repairs they are not liable for the omission. That may be as between themselves and their landlord, but their liability to the plaintiff is because they continued a nuisance until it killed the deceased. (*Wasmer* v. *Del., Lack. and W. R. R. Co.,* 80 N. Y., 212.) The Standard Oil Company requested the court to charge the jury that the occupation of a portion of the building by the company at the time the wall fell was not a ground of recovery against it. The court declined to charge as requested. The theory upon which the trial court submitted the case to the jury made the liability of this defendant to depend upon the question whether this wall was a nuisance at the date of the renewal of this defendant's lease to Murphy & Liscomb in May previous to the accident. This was distinctly stated in the charge, and was repeated after the denial of the request now under consideration. Assuming that this request might have been properly granted, we cannot think that its denial in any way prejudiced this defendant's case. This defendant's possession was the same after as before this renewal.

The previous possession was evidence of its knowledge at the date of the renewal, the possession continued to the date of the accident; but as the court explicitly instructed that the defendant's liability depended upon the facts at the date of the renewal, we do not think we ought to hold that the mere denial of this request was an instruction that its previous and subsequent explicit instructions were not to govern the jury.

The refusal of the request to charge the jury that the notice given by the policeman to the foreman of the agents of the Standard Oil Company, shortly before the accident, of the condition of the wall, was entirely immaterial upon the question of the Standard Oil Company's liability, is urged as error. These agents were the persons in possession in behalf of the company before the renewal of the lease as well as afterwards. If oral or written notice had been necessary to establish the liability of this company, then the defendant would have reason to complain of this particular notice. But the case was tried and submitted to the jury upon the question whether the defendant had had ocular notice. In other words, whether its agents in the building daily for years had not seen the patent defect in this wall. The rule, undoubtedly, is that where one hires or buys land upon which there is an existing nuisance which may prove injurious to others, notice of it ought to be brought to him before suit will lie against him. This notice may be given by others or acquired by himself. The manner of it is not import-ant if the facts justify the inference that he acquired it. Where the nuisance is not obvious, as where a culvert constructed by his predecessor in title is too small to pass the high waters of a freshet, the grantee, in the absence of notice received from others or through his own observation, has been excused in the first instance. (*Conhocton Stone R.* v. *Buffalo, etc., R. R. Co.*, 51 N. Y., 573.) So in the case of an overhanging gutter. (*Haggerty v. Thomson*, 45 Hun, 398.) Also, in a case of a conducter on the front of his house, not used by him, through which the water from his neighbor's roof discharged upon the sidewalk and formed ice. (*Wenzlick* v. *McCotter*, 87 N. Y., 122.) But if he had made or repaired it the case would be different, for he would be an active participant and upholder. Actual notice, however acquired, is enough to charge him. (*Brown* v. *Cayuga, etc. R. R. Co.*, 12 N. Y., 486; *Irvine* v. *Wood*,

51 id., 225 ; *Swords* v. *Edgar*, 59 id., 39 ; *Wasmer* v. *Del. Lack.*, *etc.*, *R. R. Co.*, 80 id., 212.)

The court instructed the jury that no recovery could be had against this defendant unless it knew or ought to have known, or had notice before the 1st of May, 1885, that the wall was in a dangerous condition.   In view of this charge and of the evidence of opportunity to acquire notice, the refusal to charge that the notice given by the policeman after that date was immaterial could not be expected to prejudice the defendant.

We have examined all the other exceptions and find none requiring a reversal.

The judgment should be affirmed, with costs.

LEARNED, P. J., and INGALLS, J., concurred.

Judgment affirmed, with costs.