CITY OF MEMPHIS, Respondent, v. HENRY A. MILLER, Appellant.

St. Louis Court of Appeals, January 10, 1899.

Damages for Injuries: INSTRUCTIONS: PRACTICE, TRIAL. In the case at bar the defendant on the trial asked a great number of instructions on the theory that if the original construction of the door and its supports were in a safe condition when he leased the property then he was not liable; that it was the duty of the tenants to keep the door in a safe condition. Held, that the trial court did not err in refusing said instructions.

*Appeal from the Scotland Circuit Court.*—HON. REUBEN F. ROY, Judge.

AFFIRMED.

SMOOT, MUDD & WAGNER for appellant.

The tenant and the tenant alone is liable for an injury that occurs to a traveler on the sidewalk while property is in possession of the tenant. City of Lowell v. Spoulding, 50 Am. Dec. 775. See especially pages 780 and 781, where it is said if there is no nuisance either active or dormant at the time of letting, but a nuisance occasioning injury to a third person caused by the lessee's negligent use

of the premises, the lessor is not liable, if there is no agreement to repair and the property being in possession of a tenant when the injury occurs owner is not liable. See authority above and see farther, Offerman v. Starr, 44 Am. Dec. 211; White v. Montgomery, 58 Ga. 204; Mellon v. Morrill, 126 Mass. 545; Edwards v. Railroad, 25 Hun. 634. Of course if he renews the lease. Burdick v. Cheadle, 26 Ohio St. 393. There are only two ways in which a landlord can be made liable in case of injury to a stranger by reason of defects where he has agreed to repair or rent the same with a nuisance on it. Parties otherwise must look to tenant and tenant alone. Taylor on Landlord and Tenant [7 Ed.], sec. 175; Wood on Landlord and Tenant [12 Ed.], sec. 707; Gridley v. Bloomington, 68 Ill. 47. The tenant and not the landlord is liable for injuries that happen while the tenant is in possession. See the City of Brooklyn v. Railroad, 47 N. Y. 475. But the landlord not being in possession or having agreed to repair or having renewed the lease while in bad condition he can not be held liable. Clancy v. Byrne, 56 N. Y. 136; Gridley v. Bloomington, 68 Ill. 47; Oakham v. Halbrook, 71 Cush.302; Stuart v. Putman, 127 Mass. 403. If the injury occurs by reason of nonrepairs the party and the property is in possession of tenant, there can be no recovery against the landlord. See Clancy v. Byrne, 56 N. Y. 129. If the tenant fails to repair and the injury occurs from that the landlord is not liable. Gordon v. Peltzer, 56 Mo. App. 599. The defendant had the right to build the cellar way and same was not a nuisance. Gordon v. Peltzer, 56 Mo. App. 599. For it seems well settled that in the absence of a covenant to do so the landlord is under no legal obligation to repair. Ward v. Fagin, 101 Mo. 699. The landlord is not answerable for the tenant's neglect. Gilland v. Railroad, 19 Mo. App. 411. The hole in the sidewalk did not constitute a nuisance. Adams v. Fletcher, 17 R. I. 137; Fidher v. Tirkell, 21 Mich.

120; Kirkpatrick v. Knapp, 28 Mo. App. 427. The door not being a nuisance the landlord can not be held. 30 Am. Dec. 695; Stewart v. Putman, 127 Mass. 403. The reletting of the premises from year to year under the lease, tenants at all times remaining in possession, was not such a letting as would make the landlord liable. State v. Williams, 30 N. J. Law, 112. * * * The instruction offered by defendant in the nature of a demurrer to the evidence should have been given. Clancy v. Byrne, 56 N. Y. 129; Cleveland Co. v. Wheeler, 14 Ill. App. 112. Where an elevator is under the control of a tenant and a rope breaks from want of repair, landlord is not liable. Simton v. Butler, 40 Ohio St. 158. The landlord's liability in respect of possession is suspended as soon as the tenant commences his occupation. 12 Am. and Eng. Ency. of Law, 689. See authorities above cited.

No brief filed for respondent.

BLAND, P. J.—The defendant is the owner of a store building and the lot on which it is situated fronting on Main street in the city of Memphis, Missouri; the building has a cellar or basement, to reach which from the sidewalk in front the defendant excavated an area in the sidewalk four feet wide and six or eight feet long extending from an opening in the cellar wall to within eighteen to twenty-four inches of the outer edge of the sidewalk; this area he bricked up on the sides and outer end; on this brick wall he placed a frame, and on the sill over the opening in the cellar he nailed a 2x8 piece of timber, and on the center of the end pieces he laid a piece of timber extending from one to the other; he covered this opening with a wooden door, divided into four sections, and laid on a level with the sidewalk, which was of plank. On the fourth of July, 1895, Mrs. Amanda J. Lawrence, with five or six other ladies, was standing on this cellar door, when a part of the supporting

framework gave way and Mrs. Lawrence was precipitated into the cellar below and received injuries, for which she sued the city of Memphis, and recovered a judgment of $250, together with her costs. Thereafter the city brought this suit against the defendant for indemnity on account of the judgment recovered against it by Mrs. Lawrence. On a trial by jury the city recovered a judgment against defendant for the full amount of the Lawrence judgment and the costs therein, from which the defendant duly appealed.

Defendant was notified by the city of the pendency, nature and object of the Lawrence suit; he was a witness for the city on the trial of the cause, employed private counsel to assist the city attorney in the defense of the suit, and counseled with the attorneys for the defense. He is so affected with notice of the Lawrence suit that according to all the authorities, he is concluded by the judgment in that case, if answerable over to the city. Garrison v. Babbage Trans. Co., 94 Mo. 130; State ex rel. v. Barker, 26 Mo. App. 487. And the fact that he was mayor of the city at the time the cause was tried, does not change nor release his personal relation to that litigation. On March 9, 1895, the defendant executed the following lease to W. H. Busey and John A. Hughes:

"Memphis, Mo., March 9th, 1895.

"I hereby lease the north 20 feet of my store building on the west side of the square in Memphis, Mo., to Busey & Hughes, a firm composed of William H. Busey and John A. Hughes, or to either of them, from this date until the 1st day of October, 1896, said premises to be used by them as a grocery store, at a rental of $25 per month, said rent being due and payable on the first day of each and every month. The said Busey & Hughes to have the privilege of subleasing said premises to any other party or parties agreeable and acceptable to me, to be used by them as a grocery. Said Busey & Hughes agree to give me 60 days written notice

of their intention of vacating said premises before vacating said premises.

"(Seal.)                                 "Henry A. Miller.

"We agree to accept the provisions of the above.

"(Signed in duplicate.)   (Seal.)      W. H. Busey,

                                 "John A. Hughes."

At the date of this contract Busey & Hughes were in the possession of the premises and were continuously in the possession thereof as tenants of defendant up to and including the day on which the accident occurred and were using the outside cellar door in connection with the premises. The defendant offered evidence tending to show that the construction of the door and its supports were of good material; that the work was done in a workmanlike manner, and the door was safe for pedestrians to pass over, and that it was in this safe condition when he leased it to Busey & Hughes.    On the day of the accident the evidence tended to show that a part of the framework or supports of the door was rotten and had broken in two, letting the door above and the person standing thereon fall into the area below.    The door was put down in 1890; there was no evidence that it had been substantially repaired at any time after its construction.    Defendant on the trial asked a great number of instructions on the theory that, if the original construction of the door was substantial and safe and that the door and its supports were in a safe condition when he leased to Busey & Hughes, then he was not liable; that it was the duty of Busey & Hughes to keep the door in a safe condition as defendant's tenants, and they alone were liable over to the city.    The court refused these instructions and instructed the jury to the effect that it was the duty of the defendant to make the repairs necessary to keep the doors in a reasonably safe condition.    Defendant assigns this ruling as error, and contends that the excavation was not a nuisance *per se,* and that as he had not

expressly convenanted with his tenants to keep the premises in repair, it was their duty to make repairs, and that they alone were liable over to the city. If the excavation was not a nuisance *per se*, his contention that it was incumbent on his tenants to make repairs, and that they—not he—are liable for the injury, is correct. Ward v. Fagan, 101 Mo. 669; Gordon v. Peltzer, 56 Mo. App. 599; Wolf v. Kirkpatrick, 101 N. Y. 146; Karte v. Coal Co., 54 Minn. 530; Wharton on Neg., sec. 817. There are a number of decided cases, especially the New York ones, which hold that an excavation made in a sidewalk by the abutting proprietor for the use of his abutting property, without a permit from the municipality is unlawful and a nuisance *per se*. Irvin v. Fowler & Wood, 5 Robertson, 482; Clifford v. Dean, 51 N. Y. 224; Congreve v. Standard Oil Co., 54 Hun. 44; Wood on Nuisance, sec. 267; Sherman and Redfield on Neg., sec. 120. Mr. Wharton in his work on Negligence, at section 816, says this "rule is at variance with the principle that no one in exercising a lawful calling is liable for anything more than the diligence of a good business man in such calling, and is inconsistent with more recent and better considered cases, which hold that if such work is done with the care good business men are accustomed to exercise in such kind of work this is an exoneration." He adds, "But clearly when the hole is illegal those concerned in making and continuing the nuisance as well as the owner himself, are liable for injuries thereby produced, irrespective of negligence." Judge Thompson, at page 345, section 7 of his work on Negligence says: "That excavations properly and safely constructed under the public street, in cities for the convenience of the owner of the premises are not inherently unlawful, and they are not liable to be treated as nuisances if kept in repair." Cited and approved in Kirkpatrick v. Knapp & Co., 28 Mo. App. loc. cit. 431. The Kansas City Court of Appeals in Gordon v. Peltzer, *supra*, held that a

vault under a sidewalk for storing coal, covered with stone and having a scuttle or hole, consisting of the usual appliances of an iron rim into which a solid metal covering was adjusted, was not a nuisance *per se,* provided the sidewalk was left in a reasonably safe condition for ordinary travel, and that it was the duty of the tenant and not the landlord to keep the area in a reasonably safe condition. The proprietor of property abutting on a public street is the owner of the soil of that part of the street fronting his lot to the center of the street and has some rights in the street not common to the public, such as the right of ingress and egress to and from his premises, the right to occupy the street temporarily to load and unload his goods, etc., but aside from these special rights the easement of the public to travel on the street is paramount to all other rights therein, and the public has a right to assume that the streets and sidewalks of a municipal corporation are reasonably safe for travel. The construction of coal vaults, with scuttles or holes opening in them which are securely covered and on a level with the sidewalk, are not necessarily dangerous; on the contrary if kept in repair, they are reasonably safe, the scuttle or hole being usually in one or the other edges of the sidewalk, and not in the path of pedestrians using the sidewalk; not so with the excavation made by the defendant, which extended across the sidewalk from the inner to within eighteen to twenty-four inches of the outer edge of it, and was directly in the path of travel; the pedestrian was compelled to step on the door and over the area or turn out of his path and pass around; the door and framework were of material which will decay and rot when exposed to the weather; the extent of the area appropriated and covered by the door was in effect an appropriation of the entire sidewalk of the width of the door, and is inconsistent with the paramount right of easement of the public, and hence unlawful and a nuisance; the right of easement was made secondary to the private use

C., R. I. & Pac. R'y Co. v. Mertens.

of the sidewalk appropriated by defendant and his tenants, for which they (the owner and his tenants) are liable for all injuries thereby produced, irrespective of negligence. Wharton on Neg., sec. 816; Tate v. Railroad, 64 Mo. 149; Lackland v. Railroad, 31 Mo. 186; City of Boston v. Gray, 144 Mass. 53; City of Denver v. Solomon, 2 Col. App. 534; Wood on Neg., sec. 269.

Our conclusion is that the learned circuit judge correctly instructed the jury, and that he did not err in refusing instructions offered by the defendant. The judgment is affirmed. Judge Bond concurs; Judge Biggs dissents.