## FEHLHAUER, Appellant, v. CITY OF ST. LOUIS et al.

### Division One, December 23, 1903.

1. **Negligence: GUARANTOR OF LESSEE.** Guarantors who guarantee that the lessee will pay his rent and that he will perform other covenants of the lease are not liable for damages to a pedestrian who was injured by falling through a cellar door in the sidewalk in front of the leased premises.

2. ————: **LIABILITY OF LANDLORD.** Where the cellar door in a sidewalk in front of the demised premises was properly constructed and was in good condition at the time of the demise, and at the time a pedestrian fell through the open door, the only ground upon which the landlord can be held liable for the consequent injuries to the pedestrian is, that the cellar door was a nuisance *per se* in the ordinary use to which it was adapted and for which it was intended.

3. ————: **CELLAR DOOR: NUISANCE PER SE.** Cellar doors constructed in a sidewalk as passageways to cellars under the abutting property, are not nuisances *per se*, if properly constructed, in good repair, and affording, when closed, a safe sidewalk for public use.

4. ————: ————: **LIABILITY OF CITY: KNOWLEDGE.** The cellar doors in the sidewalk were properly constructed and safe when the doors were shut, and plaintiff, a pedestrian, testified that when she first passed over them, about eight o'clock in the evening, they were closed, but when she returned, less than a minute later, one door was open and she fell in and was injured. There was no evidence that the city had any actual notice that the door was open, or that

it had ever before been open in the nighttime, or that it had ever before been open in the same manner or for like purposes. *Held*, that, applying the rule that, "a city is bound to keep sidewalks in a reasonably safe condition for public use, and is liable for injuries received from defects therein of which it had actual notice or which had existed for such a length of time prior to the accident as by the exercise of ordinary care it could have ascertained and remedied them," the court should have directed a verdict for the city.

5. ——: ——: LIABILITY OF LESSEE: KNOWLEDGE. It is not error in such case to instruct the jury that the lessee in actual occupancy of the premises was not responsible for the pedestrian's injuries if the doors were left open by some one not in the employ or under the control of such lessee, without his knowledge or consent, or would not have been discovered by him to have been open by the exercise of reasonable care and diligence.

6. **Motion for New Trial:** SUCCEEDING JUDGE. Where a cause has been tried and a motion for new trial filed, and then the trial judge dies and is succeeded by another, the successor has power to overrule the motion for new trial.

Appeal from St. Louis County Circuit Court.—*Hon. Jno. W. Booth,* Judge.

AFFIRMED.

*L. Frank Ottofy* for appellant.

(1)    The maintenance of the cellar door, under the facts, was a nuisance, and defendants Schrick, Wallhausers and Graul are, therefore, either as owners, lessees or bondsmen, liable for damages resulting from its use.    Tate v. Railroad, 64 Mo. 155; Keitel v. Railroad, 28 Mo. App. 665; Mancuso v. Kansas City, 74 Mo. App. 143; City of Memphis v. Miller, 78 Mo. App. 72; Wood on Nuisances, sec. 269; Dillon on Municipal Corp. (4 Ed.), sec. 1032.    (2)    Where an individual has habitually used an unguarded cellar door in the sidewalk, the city must respond in damages for injuries resulting to a traveler thereon irrespective of the length of time the door may have been open and unguarded at the time of the accident.    Frank v. City, 110 Mo. 522; Lichtenberger v. Town of Meriden, 100 Iowa 221; Smith

v. Leavenworth, 15 Kan. 81; Chapman v. Mayor and Council of City of Macon, 55 Ga. 566; City of Augusta v. Hafers, 59 Ga. 151, 61 Ga. 48; Whitty v. Oshkosh (Wis.), 81 N. W. 992; City of Chicago v. Babcock, 143 Ill. 362. (3) The defendant, R. Thomas Nester, is clearly responsible because he was in possession of the premises and the injury was caused by his wrongful act. Instructions 2 and 3 given for said defendant constitute error. Beck v. Brewing Co., 167 Mo. 199. (4) The successor in office of the judge who presided at the trial can not pass upon the motion for new trial, which alleges as one of the grounds that the verdict is against the weight of the evidence. He has no jurisdiction to review the alleged errors of his predecessor. The special judge has no jurisdiction except to pass upon and sign a bill of exceptions. State ex rel. v. Walls, 113 Mo. 47; Mill Co. v. Sugg, 142 Mo. 368.

*Chas. W. Bates* and *Wm. F. Woerner* for respondent city of St. Louis.

(1) Cellar doors, coal holes and the like in sidewalks, are not unlawful structures. If the city is liable for injury caused by such structures, the question is one of negligence. Carvin v. St. Louis, 151 Mo. 334; Benjamin v. Railroad, 133 Mo. 283; Buckley v. Kansas City, 156 Mo. 16; Gordon v. Peltzer, 56 Mo. App. 599; Kirkpatrick v. Geo. Knapp & Co., 28 Mo. App. 427; Mancuso v. Kansas City, 79 Mo. App. 142; Jegglin v. Roeder, 79 Mo. App. 428; Assn. v. Cohn (Ill.), 7 Munc. Cor. Cas. 808; Ibid, 61 N. E. 439; Rushton v. City of Allegheny (Penn.), 3 Munc. Cor. Cas. 29; City of Lincoln v. Pirner (Neb.), 3 Munc. Cor. Cas. 233. (2) The city is not an insurer of the safety of travelers on its streets or sidewalks, and although a sidewalk is in an unsafe condition, and although a traveler thereon without fault on his part is injured by reason of such unsafe condition, still the city is not liable unless it be further

shown that the city had actual notice of such unsafe condition, or that such condition had existed for such length of time prior to the accident and was of such a character that by the exercise of ordinary care the city could have discovered such condition within time to have remedied the same.   Buckley v. Kansas City, 156 Mo. 25; Carvin v. St. Louis, 151 Mo. 334; Baustian v. Young, 152 Mo. 317.   (3)   Knowledge of the city that the cellar opening was used is not notice of unlawful or negligent use thereof.   Parmenter v. City of Marvin (Iowa), 85 N. W. 90.   (4)   The judge who succeeded the judge who presided at the trial of the case had the power to pass upon the motion for new trial on the merits.   R. S. 1899, sec. 731; State ex rel. v. Perkins, 139 Mo. 117; Glaves v. Wood, 78 Mo. App. 353; Richardson v. Assn., 156 Mo. 412.   A mere casual reading of State ex rel. v. Walls, 113 Mo. 42, shows it to be in entire harmony with the later cases above cited.

*Kehr & Tittmann* for respondent Schrick.

(1)   The abutting owner has the right to construct and maintain a cellar-opening in the sidewalk and he incurs no liability by placing and maintaining it there, provided the sidewalk is left and kept in reasonably safe condition for public travel.   2 Dillon's Mun. Corp. (4 Ed.), sec. 656 B; Gordon v. Peltzer, 56 Mo. App. 599; Jegglin v. Roeder, 79 Mo. App. 434; Carvin v. St. Louis, 151 Mo. 348; Benjamin v. Railroad, 133 Mo. 283. (2) The exercise of a lawful right or authority can not afford a basis for an action.   "That can not be a nuisance so as to give a common law right of action which the law authorizes."   Paine v. Railroad, 112 Mo. 17. Hence, the rule which holds the owner as well as the tenants or occupants liable for the consequences of a nuisance, does not apply to this case.   (3)   The action is one purely for negligence in allowing the door of a cellar, which the owner had the undoubted right to

place in the sidewalk, to remain open and unguarded. For such negligence, if any there be, the occupant at the time of the injury is alone liable. The defendant Schrick had transferred his interest and gone out of possession of the property, six months prior to the accident. He, therefore, had no control of the property and was in nowise responsible for its condition at the time of the accident.

*W. B. & Ford W. Thompson* for respondents Nester and Graul.

(1) The defendants, John D. Graul and John Nester, owed no duty or obligation to the plaintiff, or to the public, and were in no manner connected with the possession of said premises; they were mere sureties of the lessee, and the obligation thus resting upon them imposed upon them simply an obligation to Schrick, the lessor, who was the original lessee of the premises from the owner. (2) The question of negligence on behalf of those in possession of the premises was a question of fact. The question of whether or not the cellar doors were open, so as to constitute a nuisance, was a question of fact which was submitted to the jury upon proper instructions; and the finding of the jury on this question of fact is conclusive against the plaintiff, and this court will not consider a question which has been submitted and determined by the jury on contradictory evidence. (3) The evidence clearly showed that the cellar doors were closed and fastened when plaintiff passed over them, running after the the child; and, according to one of her statements, only a moment or two elapsed before she again passed over them, when they were open. There was no evidence that the persons who opened them were in the employ of defendant R. Thomas Nester. Jim and Frenchy Lew were mere beer-canners and had no license or authority from defendant Nester to open the doors, and

if they opened the doors during the few seconds that elapsed while plaintiff ran over the door and returned, they were trespassers for whom defendants were not responsible. Wolf v. Kilpatrick, 22 Cen. L. J. 516; Benjamin v. Railroad, 50 Mo. App. 602; Waldhier v. Railroad, 71 Mo. 514; Clark v. Famous Shoe Clothing Co., 16 Mo. App. 463; Kilpatrick v. Knapp & Co., 28 Mo. App. 427. Defendant Nester was not chargeable with any notice of any negligence or nuisance, because the time was too short. Smith v. St. Joseph, 42 Mo. App. 392; Lampert v. Gas Company, 14 Mo. App. 376; Harrison v. Collins, 86 Pa. St. 153; Klapp v. Milwaukee, 53 Wis. 196; White v. Gloverville, 12 Hun 302; Sheel v. Appleton, 49 Wis. 125; Blakley v. Fry, 18 Hun 157; ·Miller v. Newburg, 32 Hun 24; Sikes v. Manchester, 59 Iowa 26.

BRACE, P. J.—This is an action for damages for personal injuries. The petition upon which the case was tried is as follows:

"Plaintiff for her third amended petition states that at the times hereinafter stated the defendants Helena Wallhauser and Henry W. Wallhauser were the owners of certain premises fronting on south Second street in the city of St. Louis, Missouri, being the north-west corner of south Second and Valentine streets, and known as number 425 South Second street; that defendant Andrew W. Schrick was their lessee and tenant, and that he and the defendants John D. Graul, John Nester and R. Thomas Nester are and were at said times the tenants in possession of said property and premises, and that the defendant, the city of St. Louis, is and was at all of said times a municipal corporation organized and existing under the laws of the State of Missouri; that at said times said South Second street at said number 425 and the sidewalks pertaining thereto constituted public highways of said city.

"Plaintiff states that on the 14th day of June, 1897,

the defendants, Andrew W. Schrick, John D. Graul, John Nester and R. Thomas Nester then in possession of said premises, caused a cellar door in the sidewalk to be opened, thereby causing an opening or excavation in the sidewalk in front of the premises aforesaid owned by said defendants Helena Wallhauser and Henry W. Wallhauser and leased of them by defendants Schrick and Nester; that said cellar door had been habitually left open for a long time prior thereto and constituted a nuisance, and that the defendant, the city of St. Louis, knew, or by the exercise of ordinary care could have known, that said cellar door had been habitually left open and was so open on said day; that it was the duty of all of said defendants to carefully guard and fence said opening or excavation or to cause the same to be carefully guarded and fenced, so that the said street and sidewalk should be reasonably safe for the public and for persons passing along and using the same.

''But plaintiff says that the defendants so carelessly and negligently conducted themselves in reference to the said opening or excavation, caused by the leaving open of said cellar door, that the same was left unguarded and without sufficient or any barriers to prevent persons passing by from falling into the same and that the plaintiff on the said 14th day of June, 1897, about 8:30 o'clock p. m., while lawfully and properly passing along said sidewalk and street stepped into the opening or excavation thus left by said open door and was thereby violently precipitated upon the sidewalk and seriously injured about her leg and person; that in consequence of such injuries she was confined to her bed for a long time and has suffered great pain in body and mind to her damage in the sum of $2,500; that she was disabled for the performance of her usual or any labor and has lost her earnings since said date and will hereafter lose the same to her damage in the sum of $2,500; that she was compelled to incur large expenses for medicines and

medical attendance and will hereafter suffer the same to her damage in the sum of $1,000; and that she has been permanently crippled, has lost her limb and is permanently disabled for the performance of her usual or any avocation, to her further damage in the sum of $4,000, all as the direct result of defendant's negligence.

"Wherefore by reason of the premises plaintiff says that she has been damaged in the sum of ten thousand dollars for which she asks judgment with costs of suit."

The separate answers of the defendants, the city of St. Louis, John Nester, R. Thomas Nester and John D. Graul, each denied the allegations of the petition, and set up a plea of contributory negligence. The answer of defendant Schrick was a general denial, and the separate answers of the defendants Wallhausers was a general denial, and a plea that the premises were, at the time alleged in the petition, in the possession of the defendant Schrick as lessee, or some one under him as subtenant. Issue was joined by reply. A trial was had on March 23d and 24th, 1900, before Hon. Rudolph Hirzel, and a jury, in the St. Louis County Circuit Court, to which the case had been taken by successive changes of venue, from the St. Louis City Circuit Court in which the suit was instituted.

The undisputed facts developed by the evidence are, that on the 14th of June, 1897, the defendant Helena Wallhauser was the owner of the premises known as number 425 South Second street; that theretofore, by a written lease duly executed by her and her husband, the defendant Henry W. Wallhauser, dated December 9, 1895, they had leased the premises to the defendant Andrew W. Schrick for a term of three years, beginning on the first day of January, 1896, at which date the said Schrick went into possession of the premises in pursuance of the lease. That afterwards by written lease dated December 16, 1896, the said Schrick leased the premises to the defendant R. Thomas Nester for a term

of one year and eleven months beginning on the first day of January, 1897, and ending on the 30th day of November, 1898, and thereupon the defendants John D. Graul and John Nester executed their bond in writing guaranteeing the payment by said R. Thomas Nester of the installments of rent as they became due, and the performance of his other covenants under said lease. That thereupon the said R. Thomas Nester went into possession of the premises under said lease, and was in possession of the same on the 14th of June, 1897, when plaintiff was injured. The premises are situate on the northwest corner of Second and Sylvester streets. The first story was used by Nester as a grocery store and saloon. The grocery store in the front room opened on Second street. The saloon in the rear rooms opened on Sylvester street. Beneath both rooms there was a cellar, which was used for the purpose of storing beer and coal, and in which there was a water closet. One way of reaching this cellar from the outside was a cellar door in the sidewalk on Second street in front of the premises, and north of the front door. This cellar door consisted of two wooden lids working on hinges in a frame even with the surface of the sidewalk, the lids opening outward from the center, and when open, resting flat upon the pavement, and when closed were fastened on the inside. This is the cellar door referred to in the petition. There was no defect in the cellar door of any kind, and for many years it had constituted a part of the sidewalk, and when closed was an entirely safe passway for travelers on the sidewalk. The cellar way was used only for the purpose of delivering barrels of beer into the cellar, and taking empty beer barrels therefrom. The next house, north of the premises, on Second street, was No. 423, occupied by Mrs. Obert, in which she carried on a bakery. The cellar door in the sidewalk was between the front door of the bakery and the front door of the grocery store. The sidewalk was nine feet wide, and the cellar door extended four

feet ten inches from the building into the sidewalk and was about four feet four inches wide.

Between 8:30 and 9 o'clock p. m. on the 14th of June, 1897, the plaintiff, an unmarried woman about twenty-two years of age (who was then, as she had been for several months previous thereto, in the employ of Mrs. Obert), in search of Mrs. Obert's baby, of whom she had charge and who had escaped from her custody, stepped out of the bakery across the cellar door which was then closed, stepped into the grocery store and picked up her employer's baby, whom she found therein, immediately returned with the baby on her arm, and stepping across the cellar door as she had done a moment before, fell and hurt her leg, receiving such injuries as finally necessitated the amputation of the limb.

The plaintiff in her testimony gives the following account of the accident:

"I started to go south to Nester's grocery right next to Obert's bakery, and passed over these two cellar doors and they were both closed as I walked over them, I know that; that was the closest way to get to Nester's store; I was in Nester's store long enough to pick up the child which I found behind the counter, which I don't think took a minute, and then I started back to the bakery the same way I had come over the two doors. I didn't stumble; I fell. The north cellar door was open; it was thrown entirely back; I mean to say that this north cellar door was thrown completely over; lying flat on the sidewalk; it wasn't tilted up, but it was thrown entirely over; the south cellar door was in place closed, and the north half of the pair of doors was entirely open; I didn't fall all the way into the opening; I stepped in with my right foot and fell over the door. I don't know how far down my foot went; I didn't fall down into the cellar; as I fell I saw a man with a light in the cellar; the cellar door was opened during the minute or two I was in Nester's

grocery; am positive they were closed a minute or two before the accident.''

The other evidence in the case, so far as necessary, will be noticed in the course of the opinion.

At the close of the evidence the court instructed the jury to return a verdict for the defendants Helena Wallhauser, Henry W. Wallhauser, Andrew Shrick, John D. Graul and John Nester, refused to give similar instructions as to defendant R. Thomas Nester and the city of St. Louis, and as to these defendants submitted the issues to the jury on instructions. The jury thereupon returned a verdict for all of the defendants, and in due time plaintiff filed her motion for a new trial, which motion coming on to be heard was overruled on the 10th day of November, 1900, by Hon. John W. Booth, judge of said court, successor of Judge Hirzel, who died after the filing of the motion and before that date, to which ruling plaintiff excepted, and thereupon in due time filed her affidavit for appeal, upon which an appeal was granted with leave to file bill of exceptions within sixty days, within which time the bill signed by Judge Booth was filed.

The errors assigned for the reversal are, the giving of the peremptory instructions for the defendants the Wallhausers, Schrick and Graul, instruction numbered 5 for defendant the city of St. Louis, instructions numbered 2 and 3 for defendant R. Thomas Nester, and the overruling of the motion for a new trial by Judge Booth.

(1)  The court committed no error in instructing the jury to return a verdict in favor of the defendants Helena Wallhauser, Henry W. Wallhauser, Andrew Schrick, John D. Graul and John Nester. As to Graul and John Nester the only relation they sustained to the premises was that of guarantors of the payment of the rent and the performance of the other covenants in the lease from Schrick to R. Thomas Nester. The lease contained only the usual covenants, and by their guaranty they assumed no duty to the plaintiff which

could subject them to this action upon any known principle of law.

(2)   The relation of Schrick and the Wallhausers to the premises was that of a landlord whose tenant was in the actual occupation of the premises.   The rule in such cases is that the "landlord's liabilities in respect of possession, are in general suspended as soon as the tenant commences his occupation.   But when injuries result to a third person from the faulty or defective construction of the premises, or from their ruinous condition at the time of the demise, or because 'they then contain a nuisance, even if this only becomes active by the tenant's ordinary use of the premises, the landlord is still liable notwithstanding the lease."   [Taylor, Landlord and Tenant (8 Ed.), sec. 174.]   As there was no fault or defect in the construction of this cellarway and door, and it was in good repair and condition at the time of the demise to Schrick, and from him to R. Thomas Nester, and at the time of the accident, the only possible ground upon which these landlords could be held liable to plaintiff's action would be on the ground that the cellarway and door were *per se* a nuisance in the ordinary use to which they were adapted and for which they were intended; and counsel for plaintiff so contends; but we do not think this contention can be maintained.   In Fisher v. Thirkell, 21 Mich. l. c. 21, decided in 1870, it was said by the Supreme Court of that State, per CHRISTIANCY, J., speaking of such structures:   "Judging from the reported cases, the usage or custom of constructing such work seems to have been, in England for a long period, as general as we know it has been in this country.   And, though we find many decided cases in the English books, for private injuries caused by these structures being out of repair, and indictments for obstructing highways and streets in a great variety of ways, we have been cited to no English cases, and have discovered none, in which such works have been held illegal, in themselves, when

properly and safely made, without any legislative permission, or that of the municipal authorities. Their legality seems, in all cases, to have been assumed by the courts without any showing of such special authority or any authority. They have been treated as nuisances when allowed to be out of repair, and private actions have frequently been sustained for injuries received in consequence; but we find no intimation of their original illegality, when safely and properly constructed. . . . And the same view seems to have been quite generally taken in this country, outside of the State of New York.'' The learned judge, after citing many and reviewing some of the cases, adds: ''There may be good sense and sound policy in the rule adopted in New York, making owners, constructing such works, liable as insurers against all injuries which may arise from them, irrespective of the question of negligence. But we do not think it is the sense or the policy of the common law.'' The sense and policy of the common law seems, however, to have finally prevailed, even in New York, for Judge Dillon in laying down what he regards as the sound doctrine on the subject, says it is deduced from the later decisions of the Court of Appeals of New York. That doctrine, as he states it, is, that ''the abutter is entitled as of right, subject to municipal and public regulation, to make any beneficial use of the soil of the street which is consistent with the prior and paramount rights of the public therein for street purposes. The right of the public to use the streets not only for travel and passage, but for sewer, gas, water and steam pipes, and the like purpose, is, of course, paramount to any proprietary rights of the abutter. The abutter may, as a logical and necessary result, it is believed, whether the fee is in him, or in the public, build, *as of right* underground house vaults in the streets, subject, of course, to the paramount right of the public for street uses proper where the two rights come into competition, and subject also to reasonable legislative, municipal or

police regulations as to location, mode of construction, and use of such vaults.'' [2 Dillon, Municipal Corporations (4 Ed. 1896), sec. 656 b.] That such structures are not unlawful and a nuisance *per se* when properly constructed, in good repair, and affording, when closed, a safe passway for those traveling on the sidewalk, as was the cellar door in question, seems now to be the accepted doctrine in New York, as well as generally elsewhere. [For still later authority see 2 Shearman and Redfield on Negligence (5 Ed.), sec. 703; Adams v. Fletcher, 17 R. I. 137; Korte v. St. Paul Trust Co., 54 Minn. 530; Whitty v. City of Oshkosh, 106 Wis. 87; Wolf v. Kilpatrick, 101 N. Y. 146; Jorgensen v. Squires, 144 N. Y. 280; to which numerous other cases might be added.] And such is the recognized doctrine in this State (Kirkpatrick v. Knapp & Co., 28 Mo. App. 427; Gordon v. Peltzer, 56 Mo. App. 599; City of Memphis v. Miller, 78 Mo. App. 67; Jegglin v. Roeder, 79 Mo. App. 428). The fact that the court in City of Memphis v. Miller, supra, held that the particular cellar door in that case did not come within the operation of the rule, neither impairs the force of the recognition thereof, nor furnishes a reason for its non-application in this case. Nor does the ruling in Mancuso v. Kansas City, 74 Mo. App. 138, in which it was held that, ''If a landlord leases premises with a coal hole in the sidewalk out of repair, and a tenant permits it so to remain, both landlord and tenant will be liable, as well as the city, to the party injured by such negligence,'' since this cellar door was not out of repair. In fact there is nothing in the Missouri cases cited by counsel for plaintiff, nor in any reported cases, impugning the doctrine, or affording any pretext for not applying it to the case in hand. It follows that the court committed no error in instructing the jury to return a verdict in favor of these landlords.

(3) Counsel for plaintiff contends that instruction numbered 5 given for the city is erroneous and incon-

sistent with instruction numbered 1 given for the plaintiff. In view of the verdict on the facts disclosed by the evidence, we deem it unnecessary to set out these instructions, for the reason that upon the evidence the court ought to have directed a verdict for the defendant city, and the judgment in its favor being for the right party ought not to be reversed for error in the instruction. The law in cases of this character is well settled in this State.

In Carrington v. City of St. Louis, 89 Mo. l. c. 212, it is thus stated: "It is the duty of the city to keep its streets and sidewalks in a reasonably safe condtion for persons traveling thereon with ordinary care and caution. This duty and a consequent liability extends to those cases where the obstruction or unsafe condition of the street is brought about by persons other than agents of the city. [Bassett v. St. Joseph, 53 Mo. 298; Russell v. Columbia, 74 Mo. 490.] But in such cases it devolves upon the plaintiff to show that the city had notice of the defect or ought to have had knowledge thereof by the use of reasonable care and watchfulness." Or, as stated in another case, Buckley v. Kansas City, 156 Mo. l. c. 25: "The law is settled in Missouri that a city is bound to keep the sidewalks in a reasonably safe condition for public use, and that it is liable for injuries received from defects therein of which it had actual notice or which had existed for such a length of time prior to the accident as by the exercise of ordinary care it could have ascertained, and which it had a reasonable time to remedy. [Roe v. Kansas City, 100 Mo. 190; Carvin v. St. Louis, 151 Mo. 334; Baustian v. Young, 152 Mo. 317.] "

Now applying these principles to the case in hand:

The plaintiff claims her injuries were caused by the unsafe condition of the sidewalk; that the unsafe condition was produced by one of the lids of the cellar door being open when she returned from the grocery store with the baby in her arms. She testifies that it did not

exist a minute or two before, when she passed over it into the grocery store in search of the baby. The sidewalk was then in a perfectly safe condition, and the unsafe condition was produced during the few moments she was in the grocery store. There was no evidence tending to prove that the city had or could have had actual notice of this suddenly produced unsafe condition, and it had not existed for such a length of time prior to the accident as by the exercise of ordinary care the city could have ascertained its unsafe condition in time to have remedied it. So that a recovery against the city could not be predicated on the evidence of the plaintiff, either on the ground that the city had actual notice that the cellar door was open, or on the ground that it had been open long enough for the city to have ascertained that fact in time to have had it closed before plaintiff's injury. Nevertheless it is contended that the city, by the exercise of reasonable care, could and ought to have known that the cellar door was open on this occasion from the manner in which it had been habitually used for a long time prior to the accident. Unfortunately for this contention, there is not a particle of evidence tending to prove that this cellar door was ever open at the time of night when this accident happened, or that it was ever opened before by the persons in the manner or for the purpose for which it was opened on this occasion. The plaintiff herself, who for months previous to the accident had been living next door, was familiar with, and who testified as to the manner in which this cellar door had been habitually used, and upon whose testimony reliance is placed to support this contention, testified that upon her return with the baby she did not look to see whether the cellar door was open or not, because no one would have expected it to be open at that time of night. If she, with her intimate knowledge of the manner in which the door had been previously used, had no reason to expect that it would

be open, surely that manner could not have furnished the city authorities any reason to expect that it would be open. Moreover, the uncontradicted evidence in the case is, that this cellarway was used only for the purpose of delivering barrels of beer from the brewery wagon, and returning the empty beer barrels to the wagon; that the door inclosing it locked on the inside, and the key was kept in the saloon. That when the driver came with his wagon of beer, he drove beside the sidewalk, went into the saloon, got the key, went down into the cellar from the inside, went to this door, unlocked it, threw the two lids of the door up and back upon the pavement, leaving the cellarway wide open, and through the opening thus made transferred the barrels of beer by means of a skid in the cellarway from the sidewalk into the cellar, and the empty beer barrels therein from the cellar to the sidewalk and thence into his wagon. That during this operation no barrier or guards were placed around the opening. This was the habitual use of the cellar-opening. If the plaintiff in the exercise of ordinary care had fallen into the opening while the sidewalk was being subjected to this habitual use, then there might have been some support for the contention that the use itself afforded some reason to the city authorities for expecting such a casualty, and the authorities cited in support of this contention might have some point. But that is not this case. There was a sharp conflict in the evidence as to whether the cellar door was open at all at the time plaintiff fell and received her injuries. The evidence of defendant tended to prove that it was not. That both lids of the door were closed and children sitting on them, and that the plaintiff tripped in passing over the door and fell on the door. The evidence of plaintiff as heretofore stated, and the evidence of a colored man named Timmons, who testified in substance that after the plaintiff went into the store and before she returned with the baby, he saw two men come out of the store, and go in the cellar

leaving the north lid of the door open, and that when she came out and got hurt they were back in the cellar with a light, was the only evidence that the cellar door was open on the night in question, and the only evidence tending to show how it was opened, or happened to be open on that night. If true, and for the purposes of this argument it must be so taken, it was the first time that it was ever so opened, and the first time that it was ever open at that time of night so far as is disclosed by the evidence. And this evidence of the plaintiff shows affirmatively that it was not then opened, or left open, in accordance with the previous habitual use of the premises as that use is disclosed by all the evidence, but that this was an unusual condition, suddenly and unexpectedly produced, having no connection with such previous use. A condition which the plaintiff did not anticipate, which no one else would have anticipated from such previous use, and with notice of which the city could not be charged, and it follows from what has been said that the judgment for the city ought not to be reversed.

(4) Instructions numbered 2 and 3 given for the defendant R. Thomas Nester are as follows:

"2.   The jury are instructed that if they find from the evidence in the case that the cellar doors in the sidewalk in front of the premises occupied by defendant Nester were constructed and maintained in a reasonably safe condition for passing over and upon said doors, and they further find that said doors or either of them were opened, at or before the time of the injury complained of by plaintiff, by some person or persons not in the employ or service of the defendant Nester, without the knowledge or consent of defendant, or which by the exercise of ordinary care the defendant could not have known, then the jury will find for the defendant.

"3.   The jury are instructed that if they find from the evidence that plaintiff passed over the cellar door just before the accident and at the time the door was

reasonably safe and secure for passing over, and that immediately after and just prior to the accident to plaintiff, some person or persons, not in the employ of the defendant Nester, without the authority or consent of defendant Nester, opened said door, and that defendant had no knowledge of said door being open, or by reasonable care could have discovered that said door was open, then plaintiff can not recover against defendant, and the jury will find for said defendant Nester.''

It is contended that these instructions are erroneous because in conflict with instruction numbered 1 for plaintiff, and because there was no evidence upon which to base them. We see no error in these instructions. If in conflict with plaintiff's instruction aforesaid, which was an omnibus instruction including both the city and this plaintiff, it is because of error in that instruction in favor of the plaintiff of which she can not complain, and there was evidence on which to base them, in that, there was evidence tending to show the relation which the parties who opened the cellar door sustained to the premises.

(5) Finally, it is contended that Judge Booth, the successor of Judge Hirzel, had no power to overrule the motion for a new trial. This point was directly passed upon in State ex rel. Cosgrove v. Perkins, 139 Mo. 106, the latest deliverance of this court on the subject; in which, we held that the statutory power to sign a bill of exceptions (R. S. 1899, sec. 731), carried with it the coincident power to pass upon a motion for a new trial, and we see no good reason for departing from this construction of the statute.

Finding no reversible error in the record, the judgment of the circuit court will be affirmed.

All concur, except *Marshall, J.,* not sitting.