WILLIAM HOLLEY v. IRON MOUNTAIN COMPANY, a Corporation, and MISSOURI ORE COMPANY, a Corporation, Appellants.—62 S. W. (2d) 740.

Division One, June 21, 1933..

*Polk & Williams* for appellant.

*C. O. Inman, Hyman G. Stein* and *Dubinsky & Duggan* for respondent.

GANTT, J.—Plaintiff while in the employ of Iron Mountain Company, a Missouri corporation, sustained injuries. He filed suit against the company and recovered judgment for $23,750, as damages for said injuries. He then caused executions to be issued on said judgment, which were returned *nulla bona*.

This action is a creditor's suit against the Iron Mountain Company and Missouri Ore Company, to which the Iron Mountain Company transferred the major portion of its assets.

In substance the petition charged that the transfer was fraudulent, that it was without consideration and that the Missouri Ore Company was a mere continuation of the Iron Mountain Company. The answer of the Iron Mountain Company denied the charge of fraud and recited at length the facts which led to the transfer of the Iron Mountain Company's assets to the Missouri Ore Company. The answer of the Missouri Ore Company was a general denial. Judgment was for plaintiff and against both defendants for $23,750, with interest. Both defendants appealed, but the Iron Mountain Company later abandoned its appeal.

There is no evidence tending to show that the transfer of the assets was fraudulent. And there is no evidence tending to show that any creditor, including the stockholders and directors of the Iron Mountain Company, was unlawfully preferred as such creditor. The only question is whether the transfer of the assets was for an adequate consideration, or was the Missouri Ore Company a mere continuation of the Iron Mountain Company and the transfer without consideration.

The Iron Mountain Company was organized in 1920 and purchased 16,000 acres of land in Iron and St. Francois Counties, Missouri. It undertook to operate an iron mine, sell timber, and farm about 3,000 acres of the land. The plant was completed in July, 1923. It sold all of its ore to the St. Louis Coke & Iron Company at Granite City, Illinois. In September, 1924, a receiver was appointed for the St. Louis Coke & Iron Company, which caused the Iron Mountain Company to discontinue the operation of its mine. In December, 1925, the St. Louis Coke & Iron Company resumed operations. In April, 1926, said company contracted with the Iron Mountain Company to purchase all of its ore for a period of three years. It was further agreed in said contract that the St. Louis Coke & Iron Company could within a period of four years purchase at a price named the ''mining tract'' of the Iron Mountain Company consisting of 1,100 acres, with the mineral rights under all the land belonging to said company. The evidence tends to show large deposits of ore under the land. Even so, the Iron Mountain Company continued to have financial difficulties, and in May, 1926, transferred the major portion of its assets to the Iron Mountain Mining Company, a Delaware corporation organized for that purpose. The transfer was an effort to overcome the financial difficulties of the Iron Mountain Company. The Iron Mountain Mining Company operated for two months and defaulted in the payment of interest. It then reconveyed the properties to the Iron Mountain Company.

At this time the owner of notes amounting to $225,000, secured by first mortgages on the property of the Iron Mountain Company, notified the company that the notes must be paid when due. In this situation the directors of the Iron Mountain Company began negotiations with the M. A. Hanna Company of Cleveland, Ohio, in an effort to relieve the financial difficulties of the Iron Mountain Company. At first said directors insisted that the Iron Mountain Company should retain a two-thirds interest in the business, offering the Hanna Company a one-third interest. Finally, it was agreed that the Hanna Company could have a controlling interest. As a result of the negotiations the Hanna Company and the Iron Mountain Company entered into a contract, the substance of which follows:

It provided that the Hanna Company would cause to be organized under the laws of Delaware a corporation (designated new company), with a capital stock of 5,000 shares of no par value; that upon its organization the Iron Mountain Company (designated ore company) would transfer the major portion of its assets, including its mining property, to the new company; that in consideration of such transfer the new company would issue to the ore company or

its nominee said 5,000 shares of stock, being the total authorized capital stock of the new company.

It further provided that upon the transfer of said property the new company would execute a mortgage on the property to secure bonds in the principal sum of $500,000, consisting of Series "A" bonds for $225,000 and Series "B" bonds for $275,000; that the Hanna Company would pay the notes for $225,000 secured by a first mortgage and the new company would issue Series "A" bonds at par to the Hanna Company in amounts equal to the sums paid by the Hanna Company in payment of said notes as they became due.

It further provided that upon the organization of the new company the Hanna Company would immediately advance $50,000 to the new company for exploration and development purposes within twelve months from the date of advancement; that the Hanna Company would from time to time make further advancements for said purposes not to exceed $225,000 as in the judgment of the Hanna Company might be necessary; that the new company would issue as said advancements were made Series "B" bonds at par to the Hanna Company in amounts equal to the sums advanced.

It was further provided that the Hanna Company would furnish superintendence, engineering and like services in connection with the development of the property; that it would act as sales agent of the new company and be paid for such services as set forth in the contract, and that the new company would reimburse the Hanna Company for all salaries and expenses of other persons who might devote their services exclusively to the new company for a period of thirty days or more.

It further provided that as a part of the consideration for the advancements made and to be made by the Hanna Company the ore company would transfer to the Hanna Company 2,501 shares of the stock of the new company, and that the new company would assume payment of the notes amounting to $225,000 and secured by a mortgage on the property.

It further provided that the Hanna Company could at any time after spending $50,000 for development, elect to terminate its obligations under the contract; that if it did so it would return to the ore company the 2,501 shares of stock and that the current assets of the new company at the time of such termination would be used to reimburse the Hanna Company for moneys expended under the contract.

It was further provided that the transfer of the property was subject to the St. Louis Coke & Iron Company's ore purchase and option contract.

In compliance with the contract the Hanna Company caused the incorporation of the Missouri Ore Company. The Iron Mountain

Company conveyed its "mining tract" and the mineral rights under all the land to the Missouri Ore Company, and that company assumed control of the property. It issued to officers of the Iron Mountain Company, as trustees, the 5,000 shares of its stock. The trustees transferred 2,501 shares to the Hanna Company and retained as trustees the remaining shares for the benefit of the Iron Mountain Company. A mortgage was given by the Missouri Ore Company on said property to secure the Series "A" and Series "B" bonds to be issued by said company. At the instance of the Hanna Company two of its officers were elected directors of the Missouri Ore Company. The president and principal stockholder of the Iron Mountain Company was elected the third director.

After the Missouri Ore Company assumed control, the Iron Mountain Company gave a second mortgage on its non-mining land of the value of $150,000 to secure debts of the Iron Mountain Company amounting to $500,000. In due course the Hanna Company made advancements and paid the notes amounting to $225,000 secured by the first mortgage, and thereby the second mortgage on the non-mining land became a first lien on said land. It also in due course made advancements amounting to $275,000 for development purposes. As advancements were made, Series "A" and Series "B" bonds were issued to the Hanna Company. The evidence tends to show that its management of the property was successful.

Defendant admits that the issuance of the stock of the Missouri Ore Company to the Iron Mountain Company was no consideration for the transfer of the property to the Missouri Ore Company. However, it contends that the provision in the contract for an assumption by the Missouri Ore Company of the mortgage debt of the Iron Mountain Company was an adequate consideration for the transfer. We do not think so. The Missouri Ore Company had no assets. It only had title to the property transferred by the Iron Mountain Company. The contract also provided that the Hanna Company would receive Series "A" bonds of the Missouri Ore Company for sums paid on the mortgage debt, which bonds were also secured by a mortgage given by the Missouri Ore Company on the property transferred to the Missouri Ore Company by the Iron Mountain Company. In other words, the security for the debt of $225,000 continued to be a first lien on the same property. In effect the Hanna Company purchased the notes amounting to $225,000.

Thus it appears that the provision in the contract for an assumption of said debt by the Missouri Ore Company amounted to nothing. The debt was secured by a mortgage on all the property held by the Missouri Ore Company. Furthermore, the sums advanced by the Hanna Company for exploration and development purposes for which

it received Series "B" bonds were secured by a mortgage on said property.

It is clear that the Hanna Company was willing to undertake a rehabilitation of the business, if given a controlling interest. However, it was not willing to become liable for all the debts of the Iron Mountain Company. Therefore, to facilitate the transfer of a controlling interest and to escape liability on certain debts, it was agreed to organize the Missouri Ore Company and transfer the property to said company. There is no word in the contract either tending to show an intention on the part of the Iron Mountain Company to sell, or an intention on the part of the Hanna Company to purchase the property. The Hanna Company was willing to invest $50,000 for development. If conditions warranted, it was willing to invest an additional $225,000. If the undertaking was successful it would have a controlling interest in the business. In this connection it will be noted that the Missouri Ore Company issued the 5,000 shares of stock to trustees. It was so issued to facilitate the transfer of a controlling interest in the business to the Hanna Company and to prefer the creditor stockholders of the Iron Mountain Company who had advanced large sums of money to said company.

The intention of the parties is made clear by a provision of the contract which follows:

"The Hanna Company is engaged in the business of mining ore and of prospecting, developing and operating from ore mines and iron ore mining properties and in the marketing of iron ore and has acquired experience and skill in such operations, and the Iron Mountain Company desires to procure the benefit of the skill and ability of the Hanna Company in supervising the management of the mining property and selling its products, and the Hanna Company is willing to make available its skill and ability in the premises upon the terms and conditions hereinafter set forth."

The Missouri Ore Company is a mere continuation of the Iron Mountain Company, and the transfer of the property was without consideration. The judgment should be affirmed. It is so ordered. All concur.