James W. Bond v. Anna Weiner, Shaw Harber, and City of St. Louis, Defendants, Seidel Coal and Coke Company, Appellant.

James W. Bond, Appellant, v. Anna Weiner, Shaw Harber, City of St. Louis, and Seidel Coal and Coke Company.—140 S. W. (2d) 25.

Division One, May 7, 1940.

*George A. Hodgman* and *Robert S. Lindsey* for Seidel Coal and Coke Company.

*Lee, Fricke & Lee* and *G. A. Ryan* for James W. Bond.

*Moser, Marsalek & Dearing* for Anna Weiner.

*John L. Harlan* and *Wilton D. Chapman* for Shaw Harber.

*Edgar H. Wayman* and *Jerome Simon* for City of St. Louis.

BRADLEY, C.—Plaintiff brought suit to recover $15,000 damages for personal injuries alleged to have been sustained by falling into the south coal hole (there were two) in the sidewalk at 1722 South Broadway, St. Louis. His suit was against Anna Weiner, owner of the building; Shaw Harber, the tenant; the city, and Seidel Coal and Coke Company, a corporation. The jury found. for plaintiff and against defendant, Seidel Coal and Coke Company, for $1750, and found for the other defendants. Both the Seidel Coal and Coke Company and plaintiff appealed. The Seidel Coal and Coke Company's appeal is No. 36,548, and plaintiff's appeal is No. 36,549. These appeals were first lodged in the St. Louis Court of Appeals, but were,

on motion of both appellants, transferred here on the ground that the amount in dispute exceeds the sum of $7500. [Constitution—Amendment 1884, Sec. 3; Sec. 1914, R. S. 1929, Mo. Stat. Ann., p. 2587.]

The Seidel Coal and Coke Company assigns error (1) on the refusal of its demurrer to the evidence at the close of the whole case; (2) on instruction 3 given for plaintiff; (3) on instructions 9 and 11 given for the owner and tenant; (4) on instruction 15 given for the city; and (5) on the exclusion of evidence.

Plaintiff, as appellant, assigns error (1) on alleged conflict in instructions; (2) on exclusion of evidence; and (3) on alleged inadequacy of verdict.

██ About noon, September 28, 1935, plaintiff was walking south on the sidewalk, east side of street, in front of 1722 South Broadway, and stepped his right foot on an iron coal hole cover, about 20 inches in diameter, in the sidewalk. The cover tilted downward, and plaintiff went down, struck the edge of the cover astride and was injured. He alleged that the cover was old, worn around the edge and was loose and unfastened, "not properly fitted, fastened, adjusted or locked, causing the same to be dangerous and likely to tilt and swing open when stepped upon by persons properly and lawfully using said sidewalk;" that the owner and tenant were negligent "in maintaining said public sidewalk with said circular hole or opening therein, in an unsafe and dangerous condition for foot travel thereon by reason of aforesaid condition of said iron cover;" that the city was negligent in that it "knew or by the exercise of due care could have known" of the condition of the coal hole and cover and did nothing about it.

Plaintiff alleged that, on the day prior to his injury, the defendant, Seidel Coal and Coke Company, delivered some coal to the defendant tenant, and the negligence alleged as to the Seidel Coal and Coke Company is that its employees who delivered the coal and used the south coal hole to unload, "knew or by the exercise of due care could have known that said circular iron cover . . . was unsafe and dangerous and not reasonably safe for foot travel thereon by reason of its aforesaid condition," and that these employees negligently "failed to properly fit, fasten, adjust or lock said circular iron cover . . . after having dumped said coal into said coal hole or opening."

The owner, the tenant, and Seidel Coal and Coke Company answered separately by a general denial. The city answered by a general denial, a plea of contributory negligence and a plea that plaintiff had failed to give notice of his injury as required by ordinance. If plaintiff filed reply to the answer of the city, it does not appear in the record, but no point is made on failure to reply.

Plaintiff's evidence tended to show that the coal hole cover was old, worn, etc. as alleged, and that when he stepped upon it and it tilted down, there were particles of coal on the flange upon which the outer edge of the cover rested when in place. Theodore Meiners, a city patrolman, was at the scene in a few minutes after plaintiff was injured, and testified that "after I found out what happened, I tested the lid. I put my foot on it and it wobbled. I next lifted the lid up. After that I cleaned the substance that was on the flange out. It was some foreign substance that looked something like coal. After I cleared out this foreign substance from the flange I put the lid back on. It was secure. . . . Right after the accident, I put the cover on the hole and tested it. It wobbled or tilted. It rocked up and down like a see-saw."

The defendant, Seidel Coal and Coke Company, contends that its demurrer to the evidence should have been sustained on two grounds, first, that it did not, at any time prior to plaintiff's injury, sell or deliver any coal to the tenant, Harber, and, second, if it be held that the coal delivered to Harber on the day prior to plaintiff's injury, was coal that was sold by it, still plaintiff cannot recover against it, because the delivery was by an independent contractor.

Did the defendant, Seidel Coal and Coke Company, prior to plaintiff's injury, sell or deliver any coal to Harber? Hereinafter, for the most part, we refer to the Seidel Coal and Coke Company as the corporation. It is contended that the corporation did not exist prior to September 24, 1935, and that it did not commence business until October 1, 1935, three days after plaintiff was injured, and that the corporation had nothing whatever to do with the coal sold and delivered to defendant Harber on September 27, 1935. For many years prior to October 1, 1935, Samuel Seidel had operated, in St. Louis, a coal business under the trade name of S. Seidel Coal and Coke Company. In the petition, plaintiff named, as a defendant, the "S. Seidel Coal and Coke Company, a corporation." Service was had (May 12, 1936) upon M. E. Seidel, son of Samuel Seidel, on the assumption that he (the son) was vice president of this supposed corporation, and, as stated, the corporation appeared and filed a general denial. Plaintiff did not know that the "S. Seidel Coal and Coke Company" was not a corporation, but was merely a trade name used by Samuel Seidel, until the trial (April 5, 1937) and, when this fact appeared, he took the position that the conduct and ownership of the business was, in effect, the same after the formation of the corporation as before. That is, plaintiff took the position that the corporation was functioning on the day of his injury and sold and delivered the coal to Harber, or that the situation was such that the corporation was liable anyway.

Articles of association were signed September 21, 1935, and the Seidel Coal and Coke Company was incorporated September 24,

1935, according to the certificate of incorporation issued by the Secretary of State. The capital stock was $20,000, but the number of shares and par value, if any, does not appear. The stockholders were Samuel Seidel, his three sons, M. E., J. J., and Leonard, and Isadore Sharp and Wilson L. Gould. The sum of $4000 cash was paid in, but the record does not show by whom. Neither does the record show the number of shares held by the respective stockholders, except as to the father, who had two shares in the beginning, but later sold these. September 25, 1935, the first meeting of the stockholders was held at the office of an attorney. On same date and immediately after the stockholders' meeting, the first meeting of the board of directors was held, and officers for the ensuing year were elected. M. E. Seidel was elected president, J. J. vice president, and Leonard secretary and treasurer. At this meeting of the board, the president, vice president and secretary-treasurer were authorized to draw checks upon the corporation, and the president was authorized to employ a manager. Another meeting of the board was held October 1, 1935, and a change in officers was made. The minutes of this meeting recite that the president and vice president had resigned, and that Leonard had resigned as a member of the board of directors and as treasurer; that these resignations were accepted, and that Samuel Seidel was elected president, M. E. vice president, and J. J. treasurer.

The minutes of the board meeting, October 1, 1935, further recite that Samuel Seidel desired to sell "his entire stock of coal and coke . . . as shown by the inventory of October 1, 1935;" that the corporation agreed to purchase and to give its note therefor. These minutes also show that Samuel Seidel owned 12 trucks and 7 passenger cars which he had used in the operation of his coal business, and owed $883.18 on some part of this equipment. The corporation, according to the minutes of October 1, agreed to purchase this equipment and give its note therefor in the sum of $6329.70, and assume payment of the $883.18. And on October 1, 1935, the corporation gave its six per cent demand note, which was later paid, for $10,063.31, payable to the order of "S. Seidel Coal & Coke Company." There was a notation on the note that $6329.70 of its amount was for the above mentioned equipment, and $3733.61 for the coal and coke shown by the inventory.

September 23, 1935, two days before certificate of incorporation was issued, there was deposited $4000 to the credit of Seidel Coal and Coke Company in the Mutual Bank & Trust Company, and no subsequent deposits were made until October 2, 1935, and it appears that this bank was notified when a change of officers was made October 1, 1935. At a meeting of the board on October 9, 1935, annual salaries were fixed as follows: Samuel Seidel at $10,000; M. E. Seidel at $6000; and Leonard Seidel at $4000. Samuel and wife owned the property where he had operated his coal business, and the corporation,

at the board meeting on October 9, agreed to rent this property at a specified rental of $400 per month.

Defendant Harber had been a coal customer of Samuel Seidel's for several years, and the ledger sheet of the account from 1926 was in evidence and a photostatic copy thereof is in the record. From this sheet, considered in the light of the evidence, it appears that on September 27, 1935, Harber got 15 tons of coal from S. Seidel Coal and Coke Company, that is, from Samuel Seidel, individually, and that the price was $53.03. This ledger sheet also shows that the account was paid November 15, 1935, and the evidence was that it was paid to Samuel Seidel, and not to the corporation. The record shows that the bank patronized by Samuel Seidel was the United Bank and Trust Company, and not the Mutual Bank & Trust Company patronized by the corporation, and that Samuel Seidel, on November 15, 1935, deposited in the United Bank & Trust Company and to his credit, the $53.03 paid by Harber, and other items of deposit. The record shows that Harber bought coal in 1936 from the corporation, but a new account was opened up.

Samuel Seidel, operating as S. Seidel Coal and Coke Company, had a hauling contract, effective May 1, 1935, to May 1, 1936, with the Eagle Hauling Company, a corporation. Under this contract the hauling company was to furnish its own force and equipment and make deliveries to certain areas for specified pay per ton. The hauling company delivered two of the three loads of coal to Harber on September 27, 1935, and in unloading used the south coal hole into which plaintiff fell, and the hauling company is the alleged independent contractor above referred to. The evidence was that the hauling company delivered for the corporation, after it commenced business, but so far as appears no written contract was made between the hauling company and the corporation until May 4, 1936.

After the evidence was all in, plaintiff was granted leave to amend and did amend his petition by striking the letter S from the name "S. Seidel Coal and Coke Company," wherever the name appeared.

Plaintiff has not filed a brief on the question raised by the corporation, that it did not commence business until October 1, 1935, and therefore, had no connection with the coal deliveries to Harber on September 27, 1935. There was no evidence that Samuel Seidel or the corporation did anything to cover up, and there is certainly no direct evidence that the corporation had anything to do with the sale or delivery of the coal to Harber. And unless the circumstances were such as to justify the inference that the corporation did sell and deliver the coal to Harber, or that the corporation is liable on the theory that there was no change in ownership and conduct of the business, then plaintiff cannot recover from the corporation. So far as this record shows, only M. E. Seidel and Samuel Seidel, of the

stockholders of the corporation, were active in the conduct of the business carried on by Samuel Seidel under the trade name of S. Seidel Coal and Coke Company. M. E. Seidel, the evidence showed, had been manager of the business individually owned by his father, but there is no evidence that he owned any part of it. So far as appears here, the father was the sole owner. Plaintiff does not attempt to point out the evidence that would make the corporation liable. As stated, there is certainly no direct evidence to support such conclusion, and there are no facts or circumstances warranting any such conclusion. There was no evidence that the corporation assumed any obligations (except the $883.18) of S. Seidel Coal and Coke Company. On the contrary, the evidence was that the corporation did not assume any other obligation.

It is stated in 8 Fletcher's Cyclo. Law of Private Corporations, page 357, that it is "not impossible that a partnership may be continued and coexist with a corporation formed by the parties." But not even that situation could obtain here. There were six stockholders of the corporation, and the only one of the six who owned any interest in the S. Seidel Coal and Coke Company was Samuel, and he owned, so far as appears, only a very small interest in the corporation. It is true that the corporation purchased the merchandise and equipment of the S. Seidel Coal and Coke Company, but it is also true that the corporation *paid* for what it purchased. Measured by a demurrer, all the favorable evidence on an issue is deemed to be true, and the proponent of the issue is entitled to the benefit of all such evidence and all reasonable inferences therefrom. [Morton v. St. Louis-San Francisco Ry. Co., 323 Mo. 929, 20 S. W. (2d) 34, l. c. 41; Gray v. Columbia Terminals Co. et al., 331 Mo. 73, 52 S. W. (2d) 809; Kramer v. Grand Nat. Bank, 336 Mo. 1022, 81 S. W. (2d) 961, l. c. 967.] But this rule does not aid plaintiff because there is no evidence that the corporation sold or delivered the coal, or had anything to do with the sale or delivery.

The Seidel Coal and Coke Company, the corporation, might be liable for the obligation of Samuel Seidel, incurred in his coal business, if the corporation had been organized and carried on for the purpose of taking over, without adequate consideration, his assets, used in his coal business and in order to enable him to escape his obligations incurred in the business (Holley v. Iron Mountain Company et al., 332 Mo. 1243, 62 S. W. (2d) 740; Yellow Mfg. Accep. Corp. v. American Taxicab, Inc., et al., 344 Mo. 1200, 130 S. W. (2d) 601, l. c. 608), but such are not the facts. We do not mean to suggest that Samuel Seidel is liable to plaintiff. That question is not before us.

There is no escape from the conclusion that plaintiff failed to make a submissible case against the corporation, Seidel Coal and

Coke Company, and we so rule. It will not be necessary to rule the other assignments of the Seidel Coal and Coke Company.

■ Was there such error as would entitle plaintiff to have the judgment reversed and the cause remanded as to the owner, the tenant, and the city, or either of them? As stated, plaintiff, as appellant, assigns error on alleged conflict in the instructions. It is claimed that instructions 9 and 11 given, respectively, for the owner and tenant, conflict with plaintiff's instruction No. 1. Plaintiff's Instruction No. 1 told the jury that it was negligence on the part of the owner and tenant to fail to lock the coal hole cover. Instructions 9 and 11 told the jury that the owner and tenant were "not required under the law to fasten the coal hole coverings in question with a lock." There is clear conflict, but is plaintiff in a position to complain? He is not, unless it was the duty of the owner and tenant to keep the coal hole cover locked. The first floor of the building where plaintiff was injured was occupied by the tenant's store and the second floor by the owner as living quarters. The basement, to which the coal holes led, was used almost exclusively by the tenant, but for the present purpose we will assume that the duty of the owner and tenant as to the coal hole cover was the same. Plaintiff pleaded and put in evidence, Sec. 2335, City's Rev. Code, 1926, which section provided:

"Openings in sidewalks. Any opening in a paved sidewalk leading into an area or vault beneath, or into a cellar, shall be fitted with wood or iron cover or grating, set in flagging even with the surface of the sidewalk, and said cover or grating shall have no lock, hinge, nor any fastening projecting above the sidewalk, and shall be secured in such manner as to prevent accident to anyone passing over it. Any person who shall fail to comply with the provisions of this section, or who shall leave an opening in a sidewalk uncovered, shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined not less than ten dollars nor more than one hundred dollars."

It is clear that the ordinance introduced does not *require* the cover to be locked down. And we may assume that there is no ordinance requiring this coal hole cover to be locked. Granville Hawken, a witness for plaintiff, was chief clerk of the St. Louis County highway department. "Before this employment I was an architectural engineer; started in 1925 and continued until 1933. I have had experience with these coal hole covers in sidewalks." With this background disclosed, Hawken, without objection, was accepted as an expert on coal hole covers, and stated, in his opinion, the coal hole cover concerned here should have been locked, and he explained how a locking device, beneath a cover, functioned. On cross-examination Hawken testified: "Q. Now, Mr. Hawken, you do know, as a matter of fact, do you not, that the majority of the coal hole covers in the

City of St. Louis are not equipped with a bar and a rod? You know that to be a fact, do you not? A. Not the most recent ones, no.''

Plaintiff makes no effort at all in his brief to support instruction No. 1 which told the jury that it was negligence to fail to lock the coal hole cover. We have made a somewhat extensive research, but find no authority for the proposition that it is the common law duty of a property owner and tenant or either *to lock* a coal hole cover in the adjacent sidewalk.

Neither the landlord nor the tenant is an insurer against all injuries that may result from sidewalk coal holes. ''That such structures are not unlawful and a nuisance per se when properly constructed, in good repair, and affording, when closed, a safe passway for those traveling on the sidewalk . . . seems now to be the accepted doctrine. . . .'' [Fehlhauer v. City of St. Louis, 178 Mo. 635, l. c. 648, 77 S. W. 843, and cases there cited.] It is our conclusion that plaintiff's instruction No. 1 placed a greater duty on the owner and tenant than the law requires, and that there is no ground for complaint because of the conflict.

The evidence excluded and about which exclusion plaintiff complains, pertained to subsequent repairs of the coal hole cover. The offering was that plaintiff, since time of injury; ''had occasion to observe the coal hole cover and that since the accident the same was locked and fastened down by the placement therein in the center thereof of an iron clamp or bolt.'' Plaintiff's counsel stated, at the time he made the offer, that the purpose was to show notice and knowledge, and in plaintiff's written argument it is stated that ''the trial court refused to permit in proof evidence that the cover had been repaired following this accident. This testimony, under the cases cited, while not admissible for the purpose of proving negligence, possessed some probative value as showing possession and control, and notice and knowledge of the condition existing in the sidewalk at the time of the accident, and upon whom rested the obligation to make repairs.''

The cases cited and to which reference is made are Brennan v. City of St. Louis, 92 Mo. 482, 2 S. W. 481; Bailey v. Kansas City, 189 Mo. 503, 87 S. W. 1182; Wagner v. Gilsonite Construction Co. (Mo.), 220 S. W. 890; Derrington v. Southern Ry. Co., 328 Mo. 283, 40 S. W. (2d) 1069; Wallingford v. Terminal Railroad Assn., 337 Mo. 1147, 88 S. W. (2d) 361. Certainly this excluded evidence would not have given the owner and tenant any notice of anything they did not already know. Absence of a lock could not have concerned the Seidel Coal and Coke Company, and there is nothing in the cited cases, or any other, to support the competency of the excluded evidence as to the city.

The judgment in favor of plaintiff and against the Seidel Coal and Coke Company should be reversed, and the judgment in favor of the

other defendants should be affirmed. It is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.