MICHAEL CUEVAS, an Infant, by GEORGE CUEVAS, His Guardian ad Litem, et al., Appellants, v. 73RD & CENTRAL PARK WEST CORPORATION, Respondent, et al., Defendants.

First Department, July 19, 1966.

John P. *Hale* of counsel (*Friedberg & Einhorn,* attorneys), for appellants.

*William F. McNulty* of counsel (*Bachkoff, Miller & Steger,* attorneys), for respondent.

BREITEL, J. The issue is whether an owner is liable to an infant for injuries sustained as a result of another child raising and dropping a public sidewalk grating-type cellar door on the infant's hand. The door was not locked although it had a locking mechanism, because the mechanism was in disrepair. The trial court dismissed the complaint as a matter of law at the close of plaintiffs' case.

The judgment should be affirmed.

Concededly no ordinance or statute requires that an owner who uses a cellar or vault entrance in the public way is required to keep the entrance locked or secured. If he does so, it is to protect himself against unlawful entry and larceny. The cellar doors, however, must be maintained in a manner to prevent undue risk of harm to those who use the streets lawfully (e.g., *Schweizer* v. *Willard,* 210 App. Div. 480; 4 Warren's N. Y. Negligence, §§ 4.20, 4.57).

Cases cited in the dissenting opinion involve the placing in the public way of machines, devices, or materials which in their nature or by their arrangement are dangerous and known to be attractive to children. The point is that there must be both a dangerous instrumentality and attractiveness to children. Either one without the other is not enough. The cases cited in the dissenting opinion therefore, follow a well-settled rule applicable to children using the public ways and who are not trespassers on another's land, much akin to the attractive nuisance doctrine (3 Warren's N. Y. Negligence, Children, § 2.07, esp. [3] and [4]; *id.* § 2.08). Cellar and vault doors are not dangerous instrumentalities. The rules and the distinctions are sharply delineated, with the supporting authorities, in the opinion of Mr. Justice McNALLY in *Bolsenbroek* v. *Tully & Di Napoli* (12

A D 2d 376, affd. 10 N Y 2d 960). The facts in that case are interesting and relevant. There another child put a rag into the flame of a smudge pot beside a street trench and then tossed the burning rag at the infant plaintiff injuring him. It was held that the smudge pot was not a dangerous instrumentality and the complaint was dismissed.

The distinctions are well-settled and recognized generally (Anno: Sidewalk Covering — Liability, 31 ALR 2d 1334; Anno: Cover in Sidewalk — Liability for Condition, 62 A. L. R. 1067). The sparsity of cases in this State is explained perhaps by the hopelessness of the claim under prevailing rules; but there is at least one case in point. In *Bauman* v. *Be-Jel Realty Corp.* (171 Misc. 845 [Kings County Sup. Ct.]) the infant plaintiff dropped a piece of chalk into a cellar way through a hinged grating. He and another child lifted the grating and as the other released the grating it fell on the infant's hand. It was held that there was no cause of action because the owner's duty was limited to providing a safe cover in the sense that it must be firm or fixed in its bed so as not to offer undue hazard to pedestrian users of the sidewalk. The case was affirmed (259 App. Div. 733). See, also, *Kowalchick* v. *Reshin* (146 Misc. 770 [App. Term, 1st Dept.]) in which it was held that there was no liability under facts involving an unguarded cellar entrance (a violation of the ordinance) where the infant plaintiff was injured jumping over the opening, knowing that it was there. It was stated that the purpose of the applicable ordinance was to protect users of the sidewalk not knowing of the danger from inadvertently falling into the opening. This case by its logic as well as by its precedental standing establishes the immateriality of any administrative code provision requiring that cellar doors be kept closed, let alone locked.

Many cellar and vault doors and especially hinged gratings are not locked and may be observed in that condition in the streets of this city. Of course, there is no requirement that an owner must keep a sidewalk cellar or vault door locked. The Supreme Court of Missouri has so held as to coal hole covers, a device, for the purposes of this case, of the very same nature (*Bond* v. *Weiner*, 346 Mo. 258). To similar effect, see *Mondelli* v. *Caputo* (174 N. Y. S. 625 [App. Term, 1st Dept.]). In Illinois a case, distinguishable and yet in part applicable, arose. It involved a cellar door unlocked but possessed of a hasp for padlocking. It was held that there was no obligation to lock the door and that in any event locking the door would not have prevented the sagging which created the dangerous condition (*Kalil* v. *Wolldenroot Operating Co.*, 341 Ill. App. 58). Hence,

neither the absence of any lock on the cellar door in question nor the disrepair of its locking mechanism is material to the issue in this case.

The case of *Jaked* v. *Board of Educ. of City of Albany* (198 App. Div. 113, affd. 234 N. Y. 591) is not in point. The issue was a school board's liability for unfastened iron gates on which it knew its school children played by swinging on them, as a result of which the infant plaintiff sustained injuries. The theory of liability was expressly stated to be that the defendant " had the care, custody and control of the school building, and it was its duty to keep the building and the approaches thereto in a reasonably safe condition, so as not to endanger the life or limb of children *attending* the school " (p. 115; emphasis supplied). This was not even the issue in the case but rather whether the school board had governmental immunity in negligently permitting its school children to swing on the gates. Indeed, this court refused to apply the rule of the *Jaked* case to a child who was injured on mesh wire surrounding a school because he was truant at the time (*Basmajian* v. *Board of Educ. of City of N. Y.*, 211 App. Div. 347, 351).

On no view of the issue is there any basis for a recovery. It is simply that one is not obligated to protect users, including children, who may use harmless things to cause themselves harm. Indeed, if that were not the rule, the neighbor instead of the parent would have the obligation of protecting the children from themselves and the harmless things that abound in their environment so long as the neighbor is the owner of the harmless things and learns of the children's mischievous or playful proclivities. Moreover, if the rule were otherwise it would be quite difficult to draw the line, if any, as to the harmless things which might ground liability, or in the alternative, there would be an extraordinary and thus far unrecognized restriction on the freedom of owners in the placement and use of their harmless property.

Accordingly, the judgment should be affirmed with costs and disbursements to defendant-respondent.

CAPOZZOLI, J. (dissenting). I dissent and vote to reverse the judgment herein and for a new trial.

This is an action to recover damages for personal injuries sustained by the infant plaintiff when a metal grating covering a sidewalk vault was dislodged by another child and fell on the infant plaintiff's hand; and by the infant's father for medical expenses and loss of services.

The action was brought against the 73rd & Central Park West Corp., the owner of the multiple dwelling of which the vault and

metal grating were part, and also against the tenants of the store on the street floor, which was conducted as a grocery business. At the close of the plaintiff's case the trial court dismissed the complaint as against all the defendants. This appeal has been taken only from the court's decision which dismissed as against the owner, defendant-respondent herein.

At the time of the accident the infant plaintiff was five years of age and lived with his parents next door to the multiple dwelling owned by the defendant. The operators of the grocery store were tenants of said defendant. Imbedded in the sidewalk in front of the grocery store was a vault covered by a set of metal grills, flush with the sidewalk, hinged so that they opened at the side. When these gratings were opened one could have access to a vertical metal ladder which led to a door opening into the cellar.

The grocery store operators did not use the sidewalk vault as a means of access into the cellar of which they had partial use, because there was another entrance to the cellar from a court. At the time of the accident the bottom of the vault, at the foot of the metal stairway, was covered with an assortment of litter.

There had previously been a padlock in the center of the gratings to prevent either section from being opened by anyone without a key. At the time of the accident these gratings had a double eyelet for a padlock, but both were broken off. During the year preceding the accident they could not be locked.

There was evidence offered by plaintiffs indicating that, for about a year before the accident, neighborhood children played with the gratings. They continuously opened them and let them slam shut. During that time the gratings had not been fastened in any manner. Evidence was also offered that the defendant's agent visited the premises two or three times a week and that it was his duty to check to see if anything was wrong. He never saw the gratings secured. The building superintendent, employed by the defendant, used to sweep the sidewalk where they were located.

On the day of the accident, at about 6:30 P.M., and while the temperature was about 90 degrees, the infant plaintiff was playing on the sidewalk with some friends of approximately his own age. From the testimony given by the infant plaintiff at the trial, it would seem that one of the doors was open and he was watching another child down inside the sidewalk vault when the brother of the child inside the vault came running and slammed the open section of the gratings on the infant plaintiff's hand.

It is, of course, settled law that, in determining the question

of whether plaintiffs have made out a prima facie case, we must consider the evidence in the light most favorable to them and afford them the benefit of every favorable inference which can be reasonably drawn therefrom.

If the metal gratings were located on the property of the landlord, and the infant plaintiff a trespasser, there would have been no liability. But this is not the case. The metal gratings were part of the sidewalk and the infant plaintiff was not a trespasser as he had every right to be on the sidewalk. Again, if the injured person were an adult, then he would have been guilty of contributory negligence and could not succeed in his action. However, we are dealing with a five-year-old child, who is *non sui juris*, and the question of contributory negligence plays no part in the case.

The case of *Parnell* v. *Holland Furnace Co.* (234 App. Div. 567, affd. 260 N. Y. 604), is clear authority in support of the contention that the dismissal of the complaint below was error. In the last-cited case a dismantled automobile, owned by an employee of the defendant furnace company, which at times had been used in the company's business, was permitted to remain on property used by the furnace company and others, adjoining its land. The tank of the car contained some gasoline. The cap of the tank had been removed by children playing about the car. On the following day the infant plaintiff, while on the running board of the car, struck two stones together, an explosion occurred and flames came out of the gasoline tank. A verdict was returned on behalf of the plaintiff, which was affirmed in the Appellate Division and later affirmed by the Court of Appeals.

At pages 570 to 571 of the Appellate Division's opinion, the court said: "As to whether it was dangerous to leave the car as it was left with gasoline in its tank depends upon surrounding circumstances. The defendant furnace company must have known of the practice of children to play in the driveway and about the premises. A former employee of the defendant furnace company testified that he saw children there on many occasions. The defendants should have taken into consideration the well-known propensities of playing children, among others, to climb about disused vehicles and to take off easily removable parts and appliances. At least the jury were entitled to say that they had this knowledge and should have taken these things into consideration."

In the case of *Tierney* v. *New York Duban Bros.* (288 N. Y. 16) an electric truck was parked in the street while the driver was making a delivery. The operator had turned off the power

and had applied the emergency brake. The doors of the truck were left unlocked, as was the safety switch. While the operator was away the children entered the truck, started it and the infant plaintiff was injured. Damages were awarded to him in the trial court. In the Appellate Division the verdict was reversed and complaint dismissed. The Court of Appeals held that it was error to have reversed the trial court and to dismiss the complaint, as it was a question for the jury as to whether or not defendant exercised reasonable care under the circumstances. At page 19 of the opinion the court said:

" A dangerous attraction in a public highway may impose liability to a child on the part of the one responsible therefor, because of failure to exercise due care although there would be no liability if the attraction were upon private premises where the child had no right to go. In the instance presented here the defendant, in connection with its business, was practically using the sidewalk as a part of its automobile platform. [Citing cases.]

" It was the duty of the operator of the motor vehicle involved here, when he permitted it to be unattended, to leave it in such condition that it could not be put in motion except by the intervention of an external cause not to be anticipated or guarded against."

In the case of *Boylhart* v. *DiMarco & Riemann* (270 N. Y. 217) a general contractor, constructing a subway, was held liable for injury sustained by a child, caused by fall of steel beams insecurely piled in the street by a subcontractor. The accident occurred as a result of the child playing on and about the beams. At page 221 of the opinion, the court said: " Among the members of the public to whom the duty of care was owing were children playing on the street, since their proclivities as matter of common knowledge might draw them to such objects in the course of play."

The plaintiff, a 10-year-old boy, suffered injuries as a result of playing on a movable stairway which was part of a fire escape in front of premises owned by defendant. It appeared that when the child approached the building with another boy, they noticed the end of the stairway resting on the sidewalk and a third boy sitting on the bottom step. The plaintiff went half way up the stairway when the boy on the bottom step got up and the stairway rose, throwing plaintiff over the stairway rail to the street. It was held that dismissal of the complaint by the trial court was error and the case should have been submitted to the jury. (*Harkins* v. *East New York Sav. Bank,* 260 App. Div. 394.)

At page 395 of the last-cited case the court said: "There was evidence that for a month prior to the accident the locking device was released and that for months prior to the accident children played on the fire escape and stairway when the stairway was lowered to the sidewalk. As the stairway was resting on the sidewalk where children had a right to play, the infant may not be regarded as a trespasser. [Citing cases.] A jury question was presented." Also, see, *Kunz* v. *City of Troy,* 104 N. Y. 344; *Herman* v. *Josephsohn,* 188 App. Div. 163; *Berl* v. *Rochester State Corp.,* 14 N. Y. S. 2d 516; *Kirby* v. *Newman,* 239 N. Y. 470.)

The principle of law which runs all through cases of this type is that children must be expected to act upon childish instincts and impulses and a greater duty of care must be exercised toward children than toward adults.

In the case at bar it should have been apparent to the defendant that the nature of the hazard and the contact which children had with it presented potential peril to these children, so that a failure to take proper precautions might well constitute negligence. The infant plaintiff had a perfect right to be on the sidewalk and while an adult in his place would be guilty of contributory negligence, the same degree of care cannot be applied to him.

The argument advanced in the majority opinion that there must be both a dangerous instrumentality and attractiveness to children, sets forth the general rule which governs the case of an infant plaintiff who is a trespasser on defendant's land. Further, an article which may ordinarily be harmless, can be turned into a dangerous instrumentality by the manner in which children handle it. (*Jaked* v. *Board of Educ. of City of Albany,* 198 App. Div. 113, affd. 234 N. Y. 591, where failure to provide means of fastening gate, on which children were in the habit of swinging, was held to constitute negligence.) Each case must be judged on its own facts and surrounding circumstances. (*Parnell* v. *Holland Furnace Co., supra.*)

In any event, we are not dealing with a trespassing infant plaintiff. The defendant was under a legal duty to exercise reasonable care in the manner in which he maintained the gratings. Concededly, "The opening in the street when uncovered is dangerous. The law places upon the owner a duty of care 'measured by whatever public safety requires,' and * * * notice that the opening is uncovered * * * creates a situation where the owner is called upon to take steps to protect the public. Failure to protect under such circumstances may create a liability". (*Kirby* v. *Newman, supra,* p. 474.)

Section C26–226.0 of the Administrative Code of the City of New York, entitled " Cellar steps; cellar doors " provides, in part: " such door * * * shall not be permitted to remain open, except when in actual use for ingress or egress of persons or for the loading or unloading of things out of or into such cellar or basement story." Such doors must be closed and the only time during which they could legally be kept open would be when they were actually in use for the purposes indicated in the ordinance. But the proof is clear that the gratings were opened, not for the purposes allowed by law, but by children who had been playing with and around them for about a year before the accident. The defendant knew this and he did nothing about it. The responsibility was his.

The cases cited in the majority opinion are clearly distinguishable from the case at bar. None of the cited cases treats with a situation where the children had been known by the defendant to be playing, for some time before the accident, with the particular instrumentality involved.

It is argued by the defendant that the proximate cause of the accident resulting in the injury of the infant plaintiff was not the negligence charged against the defendant in failing to secure the gratings, but, rather, the act of the boy in knocking the open portion down on the infant plaintiff's hand. This can best be answered by what was said by the Appellate Division in *Parnell* v. *Holland Furnace Co.* (*supra*, p. 571) in disposing of an argument similar to the one presented by the defendant: " The act of the Mahoney boy in removing the cap the day before the accident did not as matter of law break the chain of causation between the acts of the defendants and the accident. It was at most a question for the jury whether such conduct was reasonably to be anticipated." So, too, in the case at bar, the action of the boy who caused the open portion of the gratings to strike the infant plaintiff's hand was, at most, a question for the jury as to whether such conduct was reasonably foreseeable. (Prosser, Torts [3d ed.], p. 311, " Foreseeable Intervening Causes ".)

In short, the test is this: Should the defendant have known that there was danger that children would be hurt when playing with these gratings or should it have had reasonable ground to apprehend some accident from their presence in the sidewalk, in the manner in which they were being maintained.

The judgment should be reversed and a new trial ordered.

Botein, P. J., and Eager, J., concur with Breitel, J.; Capozzoli, J., dissents in opinion, in which Steuer, J., concurs.

Judgment affirmed, with $50 costs to the respondent.