■ JOHN DEROSA et al., Respondents, v CITY OF NEW YORK, Appellants. [817 NYS2d 282]—

Order, Supreme Court, Bronx County (Mark Friedlander, J.), entered March 15, 2005, which denied defendants' motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, the motion granted and the complaint dismissed. The Clerk is directed to enter judgment accordingly.

Plaintiff John DeRosa (DeRosa) commenced this action for injuries sustained when he fell down a stairway leading to Monument Park in Yankee Stadium. Plaintiff Denise DeRosa asserted a claim for loss of services.

At his deposition, DeRosa testified that on October 3, 2001, he went to Yankee Stadium to see a game with his wife. He had been to the stadium 8 or 10 times prior to that day.

Prior to the start of the game, DeRosa went to visit Monument Park, which is located within the stadium in the area of left field. Metal stairs with handrails on both sides lead from the field level seats to Monument Park. No other people were on the stairs and Mrs. DeRosa went down the stairs first.

DeRosa testified that as he reached the second or third step, he "thought like my foot slid on something" and he fell down the stairway, landing at the bottom. Neither he nor Mrs. DeRosa noticed any substance on the stairs. DeRosa testified he reached · for the left handrail, but could not grip it because it was flush against the wall. He was carrying a mug in his right hand.

Denise DeRosa testified at her deposition that she was walking down the same stairs in front of her husband, holding onto the right handrail. He fell behind her and then his body went past her on the left side of the steps as he fell all the way to the bottom of the stairs. She did not notice any wetness, liquid or debris on the stairs.

Plaintiffs' expert, Robert Schwartzberg, submitted a report stating that the stairs in question violated building code requirements for exit stairs in a number of particulars, specifically, that the treads were not level, tread width varied more than permitted by the building code, and the left handrail was inappropriately located. He also reported that the stairway was a required exit and did not meet the building code requirements for such a stairway. The verified bill of particulars claimed, inter alia, that the stairs were excessively steep, sharply inclined, and improperly constructed and installed, thus creating a hazardous condition.

Anthony Randazzo, Director of Stadium Operations since 1998, testified at his deposition that his duties included overseeing the day-to-day operations at the stadium, including Monument Park. His search of the stadium records did not disclose any record as to when the stairs were installed or by whom. He testified there were no previous complaints about the handrails, there were no maintenance or repair records for the stairs, and he was not aware of anyone else falling on the stairs. The stairs were moved after the accident so that the handrail was no longer against the wall.

The security guard who was assigned to Monument Park during most of the 2001 baseball season testified that he recalled the incident, as it was the only time someone fell down the stairs. He stated that as DeRosa walked down the steps, he thought DeRosa's knee gave out, causing him to roll down the stairs. He further testified he did not see DeRosa grab the handrail.

Defendants moved for summary judgment, arguing that they neither created nor had notice of any allegedly dangerous condition. In addition, an affidavit from defendants' expert, Jeffrey Ketchman, opined that the stairway was not a required exit, nor was it a required interior or exterior stair as defined by the building code. Rather, Ketchman stated the stairs were "special purpose stairs" which allow patrons access to Monument Park from the left field seating area, and thus were not subject to building code requirements. After measuring the riser from which DeRosa fell, Ketchman found it be within acceptable construction standards, and opined, improperly, that the stairs were not the cause of DeRosa's fall.

Plaintiffs opposed the motion, arguing that the stairway was indeed an exterior stair, as Monument Park was an "exterior court" within the confines of Yankee Stadium. Plaintiffs' expert repeated the findings of his prior report, stating that the variations in riser heights and stair widths created an unsafe condition, did not meet proper engineering standards and did not comply with building code requirements.

In reply, defendants argued, inter alia, that expert witness Schwartzberg never made specific reference to the top three steps, where DeRosa claimed he fell. In contrast, defendants' expert found those steps to be uniform and level, and hence could not have caused DeRosa's fall.

The IAS court denied the motion for summary dismissal, finding that even if a second handrail was not required, its presence created an "illusion of safety" and caused DeRosa to lean toward it to steady himself. This, the court reasoned, created an issue of fact as to whether "the presence of a second handrail, which did not serve its intended function, was a proximate cause of plaintiff's fall." The court further found that there was a question of fact as to whether the positioning of the handrail in the same location for 14 years constituted constructive notice.

Where a defendant is the proponent of a motion for summary judgment, it has the burden of establishing that there are no material issues of fact in dispute, thus entitling it to judgment as a matter of law (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). Once the defendant establishes a prima facie entitlement to such relief as a matter of law, the burden shifts to the plaintiff to present facts, in admissible form, demonstrating that genuine, triable issues exist precluding the grant of summary judgment (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

Here, defendants sustained their burden of proof that they did not create or have actual or constructive notice of the dangerous condition. Although DeRosa testified he slipped on something prior to the fall, neither he nor his wife noticed any substance on the stairs. There were no previous accidents reported, the photographs taken of the stairs and Ketchman's examination did not reveal any defects in the stairs, and defendants did not know when the stairs were installed or by whom.

To defeat this motion, plaintiffs had to establish the existence of "facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred" (*Ingersoll v Liberty Bank of Buffalo*, 278 NY 1, 7 [1938]). However, such proof must permit a finding

of proximate cause "based not upon speculation, but upon the logical inferences to be drawn from the evidence" (*Schneider v Kings Highway Hosp. Ctr.*, 67 NY2d 743, 744 [1986]).

Plaintiffs argue that their expert raised questions of fact by stating that the stairs did not comply with building code requirements for exit stairs, as well as height and width requirements.

New York City Building Code (Administrative Code of City of NY) § 27-232 defines "interior stair" as "A stair within a building, that serves as a required exit." In contrast, an "exterior stair" is "A stair open to the outdoor air, that serves as a required exit." "Exit" is defined as "A means of egress from the interior of a building to an open exterior space." An "open exterior space" is "A street or other public space; or a yard, court, or plaza open on one or more sides and unroofed or open on all sides, which provides egress to a street or public space." "Public space" is "An open space outside of a building." For exterior stairs to be used as exits, they must also comply with the requirements of interior stairs (Administrative Code § 27-376). Those requirements include handrails on both sides, with a finger clearance of 1½ inches (Administrative Code § 27-375 [f]).

Statutory interpretation is a question of law that should be decided by the court (*Robbins v County of Broome*, 87 NY2d 831, 834 [1995]). We have previously held that the question of whether the Administrative Code requires a staircase to have a particular type of handrail is one of law, not of fact, and that it is error for a trial court to submit that issue to a jury (*Gaston v New York City Hous. Auth.*, 258 AD2d 220, 224 [1999]).

The outdoor stairs to Monument Park lead from a seating section on the field level of the stadium to the park area. This park is contained wholly within the stadium and does not lead to a street or public space. Thus, it cannot be considered a "public space" or "open exterior space" under the definitions in the Administrative Code. The building code provisions that plaintiffs argue were violated are not applicable to these stairs. Moreover, since Monument Park does not offer access to the street, these stairs do not fall within the requirements of the building code applicable to exit stairs.

Although defendants met their burden of demonstrating that they were entitled to summary judgment as a matter of law, plaintiffs did not meet their burden of establishing triable issues of fact from which defendants' negligence could reasonably be inferred (*Black v Loomis*, 236 AD2d 338 [1997]). "[M]ere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient" (*Zuckerman*, 49 NY2d at 562).

Defendants' motion should thus have been granted. Concur—Andrias, J.P., Marlow, Sullivan, Gonzalez and Sweeny, JJ.