OPINION OF THE COURT
Sharon A.M. Aarons, J.
Defendants move (1) for summary judgment pursuant to CPLR 3212 dismissing the first cause of action of the complaint against all defendants, and (2) to dismiss the second cause of action for failure to state a cause of action pursuant to CPLR 3211. Plaintiff submits written opposition. The defendants’ motion is granted in its entirety, and the complaint is dismissed.
The instant motion presents an issue not squarely addressed in any reported case, i.e., whether a sidewalk basement stairway, accessed through trapdoors set into the sidewalk, is an “interior stair” within the meaning of 1968 Building Code of City of New York (Administrative Code of City of NY) § 27-375. Because the court finds in the negative, it grants the motion dismissing the complaint against the out-of-possession owners in its entirety pursuant to CPLR 3212 and 3211.
Plaintiff commenced this action for personal injuries against the defendants, the owners and managers of premises located at 524 Columbus Avenue, in Manhattan. The plaintiff was allegedly injured on October 23, 2008, when, during the course of his employment, he slipped and fell on a stairway leading from sidewalk doors into the cellar of the premises. A conveyor belt had been installed on top of the stairway by the tenant, nonparty KND Corp., which leased the ground level and basement area and operated a delicatessen. The conveyor belt was used to transport deliveries from the sidewalk level to the basement of a KND Corp.’s store. Defendant 85th Columbus *653 Corporation (Columbus) owned the premises; defendant Mary Schreiber, sued individually, was the president of defendant Columbus; defendant RCR Management LLC (RCR) was the managing agent; and defendant Ari Paul was an employee of RCR.
The basement area of the premises leased to KND Corp. was accessible by means of an interior stairway, as well as the stairway from the sidewalk area into the basement level on which the accident occurred. The stairway from the sidewalk, as is common in the City of New York, was enclosed within two trapdoors set into the sidewalk. Past these trapdoors, a metal stairway lead into the basement. On top of the metal stairs leading from the sidewalk doors into the basement, KND Corp. installed, approximately 30 years ago, a mechanized conveyor belt which obstructed most of the stairway, leaving only approximately 14 inches of step accessible.
The plaintiff acknowledged at his deposition that he had, in the past, gained access to the basement by using the interior stairway located inside the deli. The stairway leading to the sidewalk was used for deliveries, not access to the basement. Generally, when deliveries were being received at the deli, one employee would stay at the street level to load merchandise onto the conveyor, and the other would remain at the base of the conveyor, in the basement, to unload the merchandise.
According to the plaintiff, in order to turn on the conveyor belt, he was required to walk halfway up the obstructed stairway to access the switch. In an affidavit annexed to the moving papers, Howard Shim, the principal of KND Corp., averred that, to the contrary, the switch was located on the wall to the right of the machine, and could be readily accessed by anyone standing in the basement to the right of the conveyor belt. Plaintiffs conduct in turning on the belt by climbing the obstructed stairway “was not the proper procedure to be used to turn on the conveyor belt, nor was it the procedure which I instructed my employees to use.” In any event, the plaintiff testified that on the day of the accident, he activated the machine by ascending halfway up the staircase. He stated that, when he turned around on the narrow step to begin his descent, due to the narrowness of the stairway, the absence of a handrail, and the alleged slippery condition of the stair tread, he fell forward, and his hand became entangled in the machine.
While the lease permitted Columbus to access the premises and make repairs at its option, the responsibility for making all *654 repairs remained on the tenant, nonparty KND Corp. Moreover, the lease provided that the owner was not responsible for alterations and improvements made by the tenant.
Defendants’ expert, Denise E Bekeart, a licensed architect, stated in an affidavit annexed to the moving papers, that the building was a commercial establishment, and thus not subject to the Multiple Dwelling Law. In addition, she stated that the building was subject to the 1968 Building Code, which was in effect from December 1968 to July 1, 2008. She examined the steps, finding them to be in good condition, with diamond plate treads, which are “not known to be slippery when not contaminated by debris.” The steps were of the kind commonly used for unloading and loading merchandise, and were not for egress, as the presence of pedestrians on the sidewalk would block emergency egress. As such, the stairs were not, she maintained, required for egress and not subject to the requirements of an exit or egress stair. According to the expert, the steps were not in violation of the 1968 Building Code of City of New York (Administrative Code of City of NY) § 27-375, as that section applies only to “interior stairs” or “exit stairs,” and not the subject staircase. Lastly, she stated that the switch to activate the conveyor belt was readily accessible by a person standing in the basement.
In opposition, plaintiff’s expert, a licensed professional engineer, stated, based on an inspection performed at an unspecified date, that the stairs were maintained in a slippery and unsafe condition, in that the treads were “poorly maintained . . . shiny and worn,” and that, due to the presence of the conveyor belt, only 13 inches of usable step was available for passage. From a reading of his affidavit, it is clear he agreed with the defendants that this case is governed by the Administrative Code. He opined that the stairway was in violation of the following sections of the Administrative Code: §§ 27-127 and 27-128 (general duty to repair); and § 27-375 (slip resistant tread). He also contended that the defendants violated Building Code of New York State §§ 1009.1 (step width), 1009.2 (headroom), and 1009.11 (handrails) (2007). Although not dispositive of the main issue in this case, plaintiffs expert conceded in his report that plaintiff could have accessed the switch for the conveyor belt without climbing the steps.
Defendants argue, generally, that the stairway itself was not defective, and that while the clearance for passage was blocked by the installation of the conveyor belt, they themselves cannot *655 be liable for the tenant’s installations. Defendants contend that they did not install or maintain the conveyor belt, nor were they responsible for maintaining the tenant’s alterations; that they had no notice of any defective condition; that the alleged slippery condition of the steps was not a structural defect; that the sole proximate cause of the accident was plaintiffs improper use of the stairway; that there is no evidence warranting individual liability for the defendants individually sued; that the doctrine of res ipsa loquitur does not apply; and that the second cause of action does not state a cognizable claim.[1]
Plaintiff contends that issues of fact exist, including whether defendants had actual or constructive notice of the condition of the steps and the conveyor belt; whether the presence of the conveyor belt violated the Building Code; whether the steps were in violation of custom and practice for stair construction and maintenance; and whether the alleged defects were the proximate cause of plaintiffs injury.
Summary Judgment
The proponent of a motion for summary judgment carries the initial burden of production of evidence as well as the burden of persuasion. (Alvarez v Prospect Hosp., 68 NY2d 320 [1986].) The moving party must tender[2] sufficient evidence to demonstrate as a matter of law the absence of a material issue of fact. Once that initial burden has been satisfied, the “burden of production” (not the burden of persuasion) shifts to the opponent, who must now go forward and produce sufficient evidence in admissible form to establish the existence of a triable issue of fact. The burden of persuasion, however, always remains where it began, i.e., with the proponent of the issue. Thus “if the evidence [on the issue] is evenly balanced, the party that bears the burden . . . must lose.” (Director, Office of Workers’ Compensation Programs v Greenwich Collieries, 512 US 267, 272 [1994]; 300 E. 34th St. Co. v Habeeb, 248 AD2d 50 [1st Dept 1997].)
The court’s function on this motion for summary judgment is issue finding rather than issue determination. (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957].) Summary judgment is a drastic remedy, which should not be granted *656 where there is any doubt as to the existence of a triable issue. (Rotuba Extruders v Ceppos, 46 NY2d 223 [1978].) Consequently, when the existence of an issue of fact is even arguable or debatable, summary judgment should be denied. (Stone v Goodson, 8 NY2d 8 [1960]; Sillman, 3 NY2d at 404.)
The role of the court is to determine if bona fide issues of fact exist, and not to resolve issues of credibility. As the Court stated in Knepka v Tollman (278 AD2d 811, 811 [4th Dept 2000]):
“Supreme Court erred in resolving issues of credibility in granting defendants’ motion for summary judgment dismissing the complaint (see, Mickelson v Babcock, 190 AD2d 1037; see generally, Black v Chittenden, 69 NY2d 665, 669; Capelin Assocs. v Globe Mfg. Corp., 34 NY2d 338, 341). Any inconsistencies between the deposition testimony of plaintiffs and their affidavits submitted in opposition to the motion present credibility issues for trial (see, Schoen v Rochester Gas & Elec., 242 AD2d 928; Mickelson v Babcock, supra).” (See also Yaziciyan v Blancato, 267 AD2d 152, 152 [1st Dept 1999] [“The deponent’s arguably inconsistent testimony elsewhere in his deposition merely presents a credibility issue properly left for the trier of fact”].)
Nevertheless, summary judgment is properly granted when the opponent of the motion raises only “tailored” testimony or “feigned” issues of fact. (Perez v Bronx Park S. Assoc., 285 AD2d 402, 404 [1st Dept 2001] [submission of a one-page affidavit from a neighbor, which was in conflict with plaintiffs deposition testimony, was insufficient to raise an issue of fact]; Glick & Dolleck v Tri-Pac Export Corp., 22 NY2d 439, 441 [1968] [“feigned” issues do not raise question of fact]; Singh v Kolcaj Realty Corp., 283 AD2d 350 [1st Dept 2001] [plaintiffs expert’s opinion that illegally parked car was proximate cause of accident was a legal conclusion which was of no consequence, and could not defeat defendant’s motion for summary judgment]; Phillips v Bronx Lebanon Hosp., 268 AD2d 318, 320 [1st Dept 2000] [“self-serving affidavits submitted by plaintiff in opposition clearly contradict plaintiffs own deposition testimony and can only be considered to have been tailored to avoid the consequences of her earlier testimony”].)
When the sufficiency of the pleadings is attacked, the allegations contained in the complaint, as supplemented by plaintiffs affidavit and bill of particulars, “must be given their most favorable intendment.” (Arrington v New York Times Co., 55 NY2d *657 433, 442 [1982], cert denied 459 US 1146 [1983].) As the Court stated in Ark Bryant Park Corp. v Bryant Park Restoration Corp. (285 AD2d 143, 150 [1st Dept 2001]):
“Generally, on a motion to dismiss made pursuant to CPLR 3211, the pleading is to be afforded a liberal construction (see, CPLR 3026), and the court should accept as true the facts as alleged in the complaint, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory (Leon v Martinez, 84 NY2d 83, 87-88; Morone v Morone, 50 NY2d 481, 484; Sotomayor v Kaufman, Malchman, Kirby & Squire, 252 AD2d 554; Fischbach & Moore v Howell Co., 240 AD2d 157). In those circumstances where the legal conclusions and factual allegations are flatly contradicted by documentary evidence, they are not presumed to be true or accorded every favorable inference (Biondi v Beekman Hill House Apt. Corp., 257 AD2d 76, 81, affd 94 NY2d 659; Kliebert v McKoan, 228 AD2d 232, lv denied 89 NY2d 802), and the criterion becomes ‘whether the proponent of the pleading has a cause of action, not whether he has stated one’ (Guggenheimer v Ginzburg, 43 NY2d 268, 275; see also, Leon v Martinez, supra, at 88).”
Accordingly, the court may freely consider evidentiary material submitted on the motion in order to remedy any defects in the complaint (Vorel v NBA Props., 285 AD2d 641 [2d Dept 2001]), with the salient issue for determination being “whether the facts as alleged fit within any cognizable legal theory.” (Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409, 414 [2001].) Out-of-Possession Landowner
An out-of-possession landlord may be found liable for failure to repair a known dangerous condition on leased premises if the landlord both assumes a duty to make repairs and reserves the right to enter in order to inspect or to make such repairs. (Worth Distribs. v Latham, 59 NY2d 231 [1983]; Restatement [Second] of Torts § 357.) In the absence of a duty to make repairs, the reservation of a right to enter and make repairs is insufficient to impose liability, unless a duty to repair is imposed by statute. (Alnashmi v Certified Analytical Group, Inc., 89 AD3d 10 [2d Dept 2011].)
In addition, as established in the seminal case of Guzman v Haven Plaza Hous. Dev. Fund Co. (69 NY2d 559, 566 [1987]), li *658 ability may be imposed on an out-of-possession landlord when the landlord reserves a right under the terms of the lease to enter the premises for the purpose of inspection and maintenance or repair, and, in the City of New York, a specific violation of the Building Code exists. (Babich v R.G.T. Rest. Corp., 75 AD3d 439, 440 [1st Dept 2010] [liability may be imposed only when there exists “a significant structural or design defect that is contrary to a specific statutory safety provision”]; Velazquez v Tyler Graphics, 214 AD2d 489 [1995]; Rodriguez v E & P Assoc., 20 Misc 3d 1129[A], 2008 NY Slip Op 51664[U] [Sup Ct, Bronx County 2008] [defect must violate a specific statute, and the violation itself constitutes constructive notice]; Nameny v East N.Y. Sav. Bank, 267 AD2d 108 [1st Dept 1999] [out-ofpossession owner may be held liable for negligence with respect to the condition of property even after the transfer of possession and control to the tenant where the landlord has a contractual right to reenter, inspect and make needed repairs at the tenant’s expense and liability is based on a significant structural or design defect that is contrary to a specific statutory safety provision].)
In order for liability to attach, the “specific” violation of the Building Code must impose more than merely a general duty of repair. In this regard, a violation of former 1968 Building Code of City of New York (Administrative Code of City of NY) §§ 27-127 and 27-128 (both sections were repealed, effective July 1, 2008, and replaced by section 28-301.1), standing alone, has been held to be insufficient to impose liability on an out-of-possession owner. (Hinton v City of New York, 73 AD3d 407, 408 [1st Dept 2010]; Mansfield v Dolcemascolo, 34 AD3d 763, 764 [2d Dept 2006] [sections imposing general obligation do not “offer an independent basis of liability”]; Boateng v Four Plus Corp., 22 AD3d 323, 324 [1st Dept 2005] [plaintiffs had failed to identify a structural or design defect that violated a specific statutory provision]; Ram v 64th St.-Third Ave. Assoc., LLC, 61 AD3d 596, 597 [1st Dept 2009] [“Administrative Code §§ 27-127 and 27-128 are general safety provisions that cannot support a claim of liability against an out-of-possession landlord based on a significant structural defect”]; Plung v Cohen, 250 AD2d 430, 431 [1st Dept 1998] [former Administrative Code §§ 27-127 and 27-128 did not impose liability on a landlord unless there is also a breach of a specific safety provision]; O’Connell v L.B. Realty Co., 50 AD3d 752, 753 [2d Dept 2008] [“statutory provisions the plaintiff claims were violated, Administrative Code of City of *659 NY §§ 27-127 and 27-128, are general safety provisions which do not constitute a sufficiently specific predicate for liability”]; Miki v 335 Madison Ave., LLC, 93 AD3d 407 [1st Dept 2012] [rejecting claim based on Building Code of City of New York (Administrative Code of City of NY) § 28-301.1]; see also Ortiz v RVC Realty Co., 253 AD2d 802 [2d Dept 1998] [violation of Village Code of Hempstead imposing only a general duty to maintain was not sufficient to impose liability on owner].) Discussion
The court agrees with the defendants that an out-of-possession owner is not generally liable for accidents which occur solely due to the manner in which the premises are arranged, absent any structural defect. Thus, where an employee of a tenant reached for an object placed on a shelf adjacent to a stairway opening, and fell down the steps, the owner was not liable — the stairs were not defective, and the owner was not responsible for the placement of storage in proximity to the steps. (Wrubel v Rose Boutique II, Inc., 13 AD3d 264 [1st Dept 2004].) Similarly, where a hatch was installed in the floor for basement access, pursuant to plans approved by the Building Department, and the tenant later installed a counter next to the hatch, thus requiring employees to squeeze past the hatch, the owner was not liable when the hatch was left open, and an employee fell into the opening while attempting to navigate the narrow passage. A properly functioning trapdoor that was left open by someone under the tenant’s control was not a structural defect. (Baez v Barnard Coll., 71 AD3d 585 [1st Dept 2010].)
On the other hand, if the stairway in question was a required exit, a permanent obstruction of the exit would constitute a statutory violation. It could hardly comport with the law that a required means of egress could be blocked off without violating the Building Code. (See Administrative Code § 27-361 [“All exits and access facilities shall be located so that they are clearly visible, or their locations clearly indicated, and they shall be kept readily accessible and unobstructed at all times”].) Accordingly, permitting the tenant to install a conveyor belt, thus obstructing passage, and the lack of handrails, if required under the Code, would constitute statutory violations for which the out-of-possession owner could be liable. Moreover, even though the parties discuss at length whether or not the owner or its agents had actual knowledge of the conditions, if statutory violations existed, the defendants as out-of-possession landlords with a right of reentry, would be charged with constructive notice of *660 any significant structural or design defect in violation of a specific statutory safety provision. (Brignoni v 601 W. 162 Assoc., L.P., 93 AD3d 417 [1st Dept 2012]; Heim v Trustees of Columbia Univ. in the City of N.Y., 81 AD3d 507 [2011].) In the court’s opinion, then, the determinative issue is whether the stairway in question was a required exit under the 1968 Building Code.[3]
Administrative Code § 27-375 states that “interior stairs” shall comply with certain requirements, including the requirement that interior stairs must have a handrail on one side. (1968 Building Code of City of NY [Administrative Code of City of NY] § 27-375 [f].)[4] “Interior stair” is defined in Administrative Code § 27-232 as “[a] stair within a building, that serves as a required exit.” (Emphasis added.) An “access stair” is defined in the same section as “[a] stair between two floors [in a building], [that] does not serve as a required exit,” and an “exterior stair” is a “stair open to the outdoor air, that [does serve] as a *661 required exit.” (Id.) “Exit” is defined in Administrative Code § 27-232 as
“[a] means of egress from the interior of a building to an open exterior space which is provided by the use of the following, either singly or in combination: exterior door openings, vertical exits, exit passageways, horizontal exits, interior stairs, exterior stairs, fire towers or fire escapes; but not including access stairs, aisles, corridor doors or corridors.” (Emphasis added.)
“Required” is defined as “required by the provisions of this code.” (Id.)
Although the experts herein dispute the nature and requirements in the Code which apply to the subject stairway, the issues as to the applicability and meaning of the Building Code are for the court to decide as a matter of law. (Gaston v New York City Hous. Auth., 258 AD2d 220, 224 [1999] [“since there was no factual dispute regarding the configuration and location of the stairs, whether the Code required the subject staircase to have a center handrail presented a question of law, not fact”]; DeRosa v City of New York, 30 AD3d 323, 326 [1st Dept 2006] [issue of whether a stairway is an interior stair is for the court to resolve]; Westra v Ten’s Cabaret, Inc., 2009 NY Slip Op 31521[U], *4 [Sup Ct, NY County 2009] [“Because the configuration and location of the steps is not at issue, the applicability of the requirements of the Administrative Code for ‘interior stairs’ is a question of law to be resolved by the Court”].)
In a recent case, the First Department considered a similar issue to the one presented here, albeit not decisive of the present issue. In Lopez v Chan (102 AD3d 625 [1st Dept 2013]), plaintiff slipped and fell down a stairway while lowering a hand truck to deliver cases of beer to a storage cellar below a grocery store. In Chan, the stairway from the sidewalk was the only means of access to the cellar. According to plaintiff, the stairway violated Administrative Code § 27-375 (e) and (f) because it lacked handrails, and because the riser heights and tread widths of the flight of stairs were not uniform. The defendant in Chan — the out-of-possession owner — submitted an affidavit from a professional engineer who opined that the allegedly violated provisions only applied to “interior stairs” as defined in the Building Code, and that the cellar stairway did not fit that definition. Instead, the expert stated, the stairway is an “access stairway” under the Building Code. The First Department reasoned that *662 because the cellar was not accessible from the inside of the store, the stairway was not within the definition of “interior stairs” under the 1968 Building Code — the storage area was not a “building,” and thus the stairway did not serve as an exit from a “building.” Since the 1968 Building Code provisions requiring handrails and uniform riser heights and tread widths only applied to “interior stairs” under Administrative Code § 27-375, the plaintiff’s claim in Chan against the out-of-possession landlord was dismissed.
Chan is factually distinguishable from the present case. As noted, in the case at hand, the basement area was accessible to other areas of the building by means of a second stairway leading to the first floor of the store. The issue thus remains whether the present stairway is an “interior” stairway, subject to the requirements that it have handrails, and meet other safety requirements, as required under the Building Code.
While certainly the stairway here was located within the basement, and connected the basement area with outside, it can hardly be conceived that a stairway leading to trapdoors set in the sidewalk would constitute a “required exit.” (See Rivera v Nelson Realty, LLC, 7 NY3d 530 [2006] [radiator was not “piping,” as that term is used in the 1968 Building Code].) While admittedly an access stair is defined as “a stair between two floors [in a building], [that] does not serve as a required exit” (§ 27-232 [emphasis added]), and this stairway did not join two floors in a building, nevertheless, it is clear that this type of stairway, found throughout the City of New York, is more akin to an “access” stair than an “interior stair.” Cellar stairs into vaults have commonly been used, and were designed for, deliveries of merchandise into cellars and basements, and not the passage of persons seeking an exit to the outside of a building. Such doors are often locked to protect against vandalism and to avoid pedestrians falling into open vaults. (See Cuevas v 73rd & Cent. Park W. Corp., 26 AD2d 239 [1966], affd 21 NY2d 745 [1968] [holding that there was no requirement that cellar doors be locked, although noting that this is often the case].) It would not be logical to think that stairways leading from basements to locked doors in the sidewalk would serve as required exits from buildings. Nor did the plaintiff establish that the basement or cellar, used for commercial storage, required an exit to the outside for safety reasons. The requirements of the Code, as to enclosures, handrails, and other particulars do not logically apply to the type of stairs at issue, which are used only for access *663 for storage. This court holds that the stairway at issue is not an “interior stair” within the meaning of the 1968 Building Code.
Because the stairway at issue was not a required exit, the stair could be converted — as it was essentially — from a staircase to a conveyor belt. In other words, the rearrangement of the premises did not create a structural defect.
As set forth in the cases cited above, former 1968 Building Code of City of New York (Administrative Code of City of NY) §§ 27-127 and 27-128 are general safety provisions which do not impose liability on the defendants. Moreover, it has not been shown that the placement of the switch to activate the conveyor belt required the use of the stair, and even if it did, that it created a structural defect in the stairway for which the out-of-possession owner would be liable. {Baez, 71 AD3d at 586.)
With respect to the alleged “slippery” condition, the plaintiff did not identify whether the alleged slippery condition was due to a transient condition, such as debris, for which the owner would not be responsible. The plaintiffs expert examined the steps, but did not state when he made his inspection, nor give any particulars as to any condition on the specific step from which plaintiff allegedly fell. The plaintiffs expert has not shown the applicability of Building Code of New York State §§ 1009.1 (step width), 1009.2 (headroom), and 1009.11 (handrails) (2007). In addition, “[n]oncompliance with regulations that govern tread width and depth and lighting does not constitute a significant structural or design defect.” (Kittay v Moskowitz, 95 AD3d 451, 452 [1st Dept 2012].)
Plaintiff has not opposed that part of the motion which was to dismiss the second cause of action under CPLR 3211. It appears that this cause of action, sounding in negligent supervision, was included in the complaint in error. Nor has plaintiff rebutted defendants’ prima facie showing that the individual defendants are not liable in their individual capacities. Those arguments not specifically addressed herein are found to be without merit, or unnecessary for disposition of this motion.
The complaint herein sets forth only two causes of action. Accordingly, the defendants’ motion for summary judgment dismissing the first cause of action pursuant to CPLR 3212 and the second cause of action pursuant to CPLR 3211 is granted, and the complaint is dismissed in its entirety. It is hereby ordered that the complaint is dismissed as to all defendants in its entirety.

. The second cause of action appears to relate to the use of an automobile, and was ostensibly included in error; plaintiff has not opposed this part of the motion.

. There is no requirement that proof be submitted in the form of affidavit, as opposed to other acceptable forms, such as deposition testimony. (Muniz v Bacchus, 282 AD2d 387 [1st Dept 2001].)

. The case law indicates that the requirements for staircase construction depend on a careful reading of the Code, and that stairways that do not constitute “interior stairs” do not need to meet the stringent requirements of 1968 Building Code of City of New York (Administrative Code of City of NY) § 27-375. In numerous cases, stairways connecting two floors have been held not to require handrails as per the Code, or meet other criteria, because they were not “interior stairways” serving as “required exits.” (Cusumano v City of New York, 15 NY3d 319, 324 [2010] [“(b)y all accounts, the stairs from where plaintiff fell did not serve as an ‘exit’ as defined by the Administrative Code . . . , but rather as a means of walking from the first floor to the basement”]; Maksuti v Best Italian Pizza, 27 AD3d 300 [1st Dept 2006], lv denied 7 NY3d 715 [2006] [rejecting plaintiffs argument that Administrative Code § 27-375 applied to all stairs; stair located under a trapdoor that led from the basement to the first floor of a restaurant did not serve as a required exit, and was not an “interior stair” within the meaning of the Code]; Mansfield v Dolcemascolo, 34 AD3d 763 [2d Dept 2006] [stairway which ran from an opening in the floor behind the bar to the basement was not an “interior stair” because it did not serve as a required exit]; Schwartz v Hersh, 50 AD3d 1011 [2d Dept 2008] [staircase did not qualify as an “interior stair” because it did not serve as a required exit from the building]; Walker v 127 W. 22nd St. Assoc., 281 AD2d 539 [2d Dept 2001] [stairs providing access between the first floor and the basement levels of the building were not “interior stairs”].)

. 1968 Building Code of City of New York (Administrative Code of City of NY) § 27-375 (f) more fully provides that
“[(Interior stairs shall comply with the following requirements:
“(f) Guards and handrails. Stairs shall have walls, grilles, or guards at the sides and shall have handrails on both sides, except that stairs less than forty-four inches wide may have a handrail on one side only. Handrails shall provide a finger clearance of one and one-half inches, and shall project not more than three and one-half inches into the required stair width.”